248 N.J. Super. 642 (1991)
591 A.2d 1018
LOIS WALTON, PLAINTIFF-APPELLANT,
v.
ANTHONY VISGIL, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued March 27, 1991.
Decided June 12, 1991.
*643 Before Judges KING, LONG and R.S. COHEN.
Allen S. Zeller argued the cause for appellant (Freeman, Zeller and Bryant, attorneys; Allen S. Zeller and Stuart W. Jay, on the brief).
William H. Hanifen, IV argued the cause for respondent.
The opinion of the court was delivered by LONG, J.A.D.
This case provides a method to practically effectuate the salutary pronouncements of Dunne v. Dunne, 209 N.J. Super. 559, 508 A.2d 273 (App.Div. 1986) and Zazzo v. Zazzo, 245 N.J. Super. 124, 584 A.2d 281 (App.Div. 1990) that children of *644 divorce are entitled to share in the financial success of their parents.
Plaintiff Lois Walton and defendant Anthony Visgil were divorced in 1982. The judgment of divorce incorporated a settlement agreement which, among other things, provided for a waiver of alimony and for child support for the two minor children of the marriage in the amount of $75 per week per child ($150). The agreement was based upon the representation that Visgil's gross income was $78,000 and Walton's $13,700. The parties later agreed to increase the child support by $50 overall.
In February 1990, Walton moved to increase child support, to compel Visgil to provide insurance for the children and for counsel fees and costs. The trial judge granted the motion to increase child support to $130 per week per child ($260) and awarded Walton a $275 counsel fee. Walton appeals, arguing that a substantial change in the parties' circumstances warranted a greater increase in child support; and that the trial judge abused his discretion by ordering an amount of child support that was less than the child support guideline amount (R. 5:6A) for parents earning a combined total of $52,000 per year, by failing to make specific findings of fact, and by awarding unreasonably low attorney's fees. We agree that the amount of child support awarded was inadequate. Thus, we reverse and remand for a recalculation consonant with the principles we set forth in this opinion.
The certification filed by Walton in support of her motion for increased child support alleged changed circumstances because of the children's maturation (they were 12 and 14 years old), the increase in the cost of living since the parties' divorce in 1982, and Visgil's improved financial circumstances since the divorce. In her certification, Walton stated that, although she has tried to live frugally, she found it increasingly difficult to maintain herself and the children solely on her salary and the child support payments. She noted that she had gone into debt, *645 including a $14,000 home equity loan to defray the cost of home repairs and ordinary expenses, but that that money is gone and she can no longer afford major repairs to her home or to her car, a 1985 Dodge Omni. In 1989, Walton's gross income was approximately $23,333.77 and her net income was $18,796.02. At the time of the motion in 1990, Walton was a teacher employed by the Haddon Township Board of Education and worked as a camp counselor in the summer. Her gross annual income in 1990 was $26,978 ($25,720 from teaching and a projected $1258 from summer day camp). Walton reported total monthly expenses of $3,086.79. Assets included her home, which she valued at $70,000 and her car, valued at $750. The home is encumbered by a $23,000 first mortgage and a $14,000 second mortgage. Walton reported as other debts a $3,000 conservation loan, $519.48 owed to Strawbridge's and $1,742.12 owed to MasterCard. She had also borrowed money from her parents for the emergency replacement of a furnace.
Visgil is a physical therapist with South Jersey Physical Therapy Associates (SJPTA), a professional corporation which he owns. He did not dispute that his income had increased and that an increase in child support was warranted. He maintained that he had previously made a voluntary increase and had occasionally provided lump sum amounts to assist with specific expenses such as $400 for children's clothing at the change of season. He also questioned Walton's application of child support monies for the children's needs, specifically questioning her home repairs, counselling fees and need for a new automobile and argued that he should have no responsibility for Walton's financial obligations to her second ex-husband from whom she was divorced in 1986.
Visgil stipulated to his ability and willingness to pay child support consonant with the children's reasonable needs, which he estimated to be $200 or $300 per week. He calculated this figure as 1/2 of Walton's budget. In 1989, Visgil's individual gross income was $198,528, net earned income was $126,853.20. His gross household income was $226,929 which included interest, *646 dividends and his new wife's salary as an administrative secretary in an undisclosed amount. For the three months prior to the hearing, Visgil reported that his gross monthly income was $9,305.20, and his net monthly income was $5,492.84. (His current wife grossed $1,256.93 per month.) He reported total monthly expenses of $8,563.90.
Visgil's assets were his residence, valued at $350,000 (encumbered by a $199,562 mortgage); a home in Avalon, valued at $180,000 (encumbered by a $100,933 mortgage); a Midlantic bank account with an unspecified balance; an account at Delaware Cash Reserve, in the amount of $60,681; and stocks and bonds held by Dean Witter Investments, valued at $86,364. He listed SJPTA as an asset but provided no value. He similarly provided no value for his SJPTA profit-sharing plan and his individual retirement account. He carried life insurance with a cash surrender value of $9,996 and owned three vehicles: a 1989 Ford Bronco, valued at $15,000; a 1989 Toyota, valued at $18,000, and a 1972 Ford pickup, valued at $500. Thus, excluding those assets for which values were not provided, Visgil disclosed gross assets of $720,541. He owed $1900 to Visa and $1200 to Mastercard.
Walton pointed out that, in addition to the omitted valuation of Visgil's assets, that his case information statement did not disclose various personal expenses for which his corporation paid. She also noted that her budget, upon which Visgil was calculating the children's needs, was artificially reduced by her circumstances.
Relying on Dunne v. Dunne, supra, the trial judge recognized that the law provides that children are entitled to share the benefits accruing to a successful parent. However, he pointed out that even where a parent has very high earnings, the amount of child support must be reasonable. He considered the $750 per week Walton requested to be unreasonable and based on her income and expenses and husband's stipulation *647 of his ability to pay, ordered Visgil to pay child support of $260 per week allocated $130 to each child.
The duty of support is always subject to review and modification upon a showing of changed circumstances. Lepis v. Lepis, 83 N.J. 139, 146, 416 A.2d 45 (1980); Dunne, supra, 209 N.J. Super. at 565, 508 A.2d 273. Here, circumstances had changed, principally because of the substantial increase in husband's income and assets and the maturation of the parties' children with the passage of time. Maturation, increases in income and increases in the cost of living are generally among the factors deemed to constitute changed circumstances under New Jersey law. Lepis, supra, 83 N.J. at 151, 416 A.2d 45. Indeed, we have recognized that children's maturation alone, particularly as they enter their teenage years as the Visgil children have done here, is sufficient evidence of changed circumstances to require reevaluation of the amount of support being provided. Shaw v. Shaw, 138 N.J. Super. 436, 440, 351 A.2d 374 (App.Div. 1976). Thus, there is no question but that a reevaluation of the Walton/Visgil child support situation was warranted.
On the date on which the trial judge entered the order in this case the child support guidelines (R. 5:6A) were "not generally intended to apply to cases in which the combined net annual income of the parties exceed[ed] $52,000." S. Pressler, Current N.J. Court Rules, Appendix IX-A, ¶ 1(b) (1990). The Committee on Family Practice recommended adoption of this income ceiling because approximately 75% of New Jersey families had incomes of $52,000 or less at the time of their recommendation. Report of the Committee on Family Practice, 122 N.J.L.J. 97, 144 (July 14, 1988). In those cases in which the guidelines did not technically apply, child support was to be determined under N.J.S.A. 2A:34-23 which provides in pertinent part:
a. In determining the amount to be paid by a parent for support of the child and the period during which the duty of support is owed, the court in those *648 cases not governed by court rule shall consider, but not be limited to, the following factors:
(1) Needs of child;
(2) Standard of living and economic circumstances of each parent;
(3) All sources of income and assets of each parent;
(4) Earning ability of each parent, including educational background, training, employment skills, work experience, custodial responsibility for children including the cost of providing child care and the length of time and cost of each parent to obtain training or experience for appropriate employment;
(5) Need and capacity of the child for education, including higher education;
(6) Age and health of the child and each parent;
(7) Income, assets and earning ability of the child;
(8) Responsibility of the parents for the court-ordered support of others;
(9) Reasonable debts and liabilities of each child and parent; and
(10) Any other factors the court may deem relevant.
On appeal, Walton contends that the trial judge abused his discretion because, although the parties' combined net incomes for 1989 ($145,649.22) far exceeded the upper limit of the child support guidelines, the amount of child support ordered ($260 per week) was below the amount specified for a family whose total net income equalled $52,000. (At the time of the motion hearing, the range of child support for families with two children earning $52,000 was $289 to $319 per week. S. Pressler, Current N.J. Court Rules, Appendix IX-C (1990)). No prior cases have examined this proposition with which we are in general agreement.
It stands to reason that where, as here, family income is significantly greater than the upper limits provided in the guidelines, the child support awarded will ordinarily exceed that which is set forth in the guidelines. The fact that the guidelines only provided a yardstick up to $52,000 was merely reflective of New Jersey's income demographics in 1989 at the time of their revision and was not indicative of an intent that those whose incomes exceeded that figure should have child support awarded with utter disregard for the guidelines. Indeed, since the decision in this case was rendered, Appendix IX-A of the Court Rules has been amended to provide that the child support guidelines will apply to all child support actions, *649 not just those in which the combined net incomes are $52,000 or less. The applicable provision now reads as follows:
These guidelines are intended to apply to all actions to establish a child support award. If the combined net family income exceeds $52,000, the court shall apply the guidelines up to that amount and supplement the guidelines award with an additional support amount based on the remaining family income and the factors enumerated in N.J.S.A. 2A:34-23.
S. Pressler, Current N.J. Court Rules, Appendix IX-A, ¶ 1(b) (1991). The revision became effective in September 1990. See S. Pressler, Current N.J. Court Rules, R. 5:6A Comment (1991). Thus, when a family's combined net income exceeds $52,000, the amount of child support ordered should exceed the range provided for families earning $52,000.
We view this amendment not as a break with prior practice but as a codification of what was actually contemplated by the Supreme Court under the earlier scheme. In other words, the application of common sense always required the award in a case involving family income significantly above $52,000 to exceed what was prescribed as a weekly range for that category, unless such a result could be demonstrated as unjust. To the extent that the trial judge in this case, which involves net family income in excess of $145,000, awarded child support in an amount considerably lower than the range provided for a $52,000 family income, we think he erred and that a recalculation is required.
The recalculation should take place on the backdrop of Dunne v. Dunne, supra, and of our most recent expression on this subject, Zazzo v. Zazzo, supra. There, we reaffirmed the principal that:
Children are entitled to have their "needs" accord with the current standard of living of both parents, which may reflect an increase in parental good fortune. We have recently ruled that a father was obliged to share a post-divorce inheritance with his children, and even reimburse college expenses retroactively to the noncustodial parent. Weitzman v. Weitzman, 228 N.J. Super. 346, 355 [549 A.2d 888] (App.Div. 1988), certif. denied 114 N.J. 505 [555 A.2d 623] (1989). There is no divorce between parent and child.
245 N.J. Super. at 130, 584 A.2d 281. In Zazzo, we also addressed a further issue which has reared its head in this case *650 insofar as Visgil objects to paying any share of items such as home repairs and the cost of a new automobile because of their benefit to Walton. In reevaluating this case, the trial judge (and Visgil) should keep in mind the following language from Zazzo:
Although not appealed from, we are also concerned about the implication that, because the child now needed two shelters, Lynn's need for the funds to maintain a year-round home for him had decreased. Lawrence even urged that in order to save money Lynn should leave her home. But see Lepis, 83 N.J. at 150 [416 A.2d 45]. See also Avery v. Avery, 209 N.J. Super. 155, 160 [507 A.2d 242] (App.Div. 1986); Salzano v. Salzano, 74 N.J. Super. 408, 412 [181 A.2d 414] (Ch.Div. 1962). While the agreement did not provide for alimony for Lynn, a nurse, nothing in the law or the agreement suggests that the needs Lynn shared with the children must be based on her $24,000 income, while the children's other needs should be judged by Lawrence's presumably more than $65,000 income. A custodial parent's needs may not be entirely divorced from those of the children. Cf. Cooper v. Cooper, 99 N.J. 42 [491 A.2d 606] (1984). If there is some incidental benefit to the custodial parent from the roof expenses component of child support, the law is not offended.
245 N.J. Super. at 131, 584 A.2d 281. In short, we see no reason why, because of their mother's impecuniousness, these children of a very successful father should be required to live in a house which is in a state of disrepair, be transported in an old or unreliable vehicle or go without a necessary new furnace. Their father's income entitles them to better, and the fact that their mother may benefit incidentally from the component for which the father pays is of no moment. Zazzo, supra.
We note that this case also points up a problem which is inherent in situations governed by Dunne and Zazzo. Walton put her finger on it when she argued that her budget for the children was artificially deflated by the reality of her very modest income. Indeed, in order to live within her means (an admirable trait), her children necessarily had to do without and her reality-based budget was low. In the future, where as here, the children are entitled to share in a parent's good fortune, the custodial parent's budget should be broken down into two parts: the reality-based component dictated by his or her income and the added projections which will, in fact, allow the children to share in the other parent's financial gain. This could include, by way of example, private school tuition, private *651 tutoring, summer camps, music or art lessons, sports clinics, vacations, study abroad, and the provision of transportation for a child who drives, to mention only a few possibilities. It could also include help to make the family home more presentable, assistance with the cost of a family car, or a larger amount of money for a teenager's clothing and incidentals. As we have said, these are only examples. What is important is that sufficient thought, effort and information is put into the two-part budget to give the trial judge a basis on which to act under Dunne and Zazzo. On remand, Walton should revise her budget accordingly.
This ruling makes it unnecessary for us to address Walton's other points except to note that counsel fees should be awarded only after the trial judge has fully explored the standards enunciated in Williams v. Williams, 59 N.J. 229, 281 A.2d 273 (1971), and Darmanin v. Darmanin, 224 N.J. Super. 427, 540 A.2d 913 (App.Div. 1988), and should set forth the reasons for the award on the record. It goes without saying that such findings of fact and conclusions of law are also necessary with respect to the substance of the decision. R. 1:7-4.
Reversed and remanded.