806 A.2d 799 (2002)
354 N.J. Super. 212
Laura J. LORO, Plaintiff-Appellant/Cross-Respondent,
v.
Gerald Del COLLIANO, Defendant-Respondent/Cross-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued January 23, 2002.
Decided June 6, 2002.
*800 Lee M. Hymerling, Haddonfield, argued the cause for appellant/cross-respondent (Archer & Greiner, attorneys; Mr. Hymerling and Patrick Judge, Jr., on the brief).
Robert J. Adinolfi, Haddonfield, argued the cause for respondent/cross-appellant (Adinolfi and Spevak, attorneys; Mr. Adinolfi, of counsel; Andrew L. Rochester and D. Ryan Nussey, on the brief).
Before Judges WALLACE, CARCHMAN and WELLS.
The opinion of the court was delivered by
*801 CARCHMAN, J.A.D.
This appeal again raises issues that we recently addressed in Isaacson v. Isaacson, 348 N.J.Super. 560, 581-82, 792 A.2d 525 (App.Div.2002), certif. denied, 174 N.J. 364, 807 A.2d 195 (2002), and requires us to consider the modification of a child support award where the supporting parent is a "high-income earner" and the income of the parties exceeds the child support guidelines. We focus on the "incidental benefits" that may accrue to the custodial parent of a child who benefits from a supporting parents "good fortune." We conclude that the judge properly increased child support to $700 per week but failed to adequately address the custodial parent's entitlement to nonessential items of support, specifically, improvements to the custodial home and furniture for the child. He also erred in his methodology for the award of counsel fees. Accordingly, we affirm that portion of the order of July 14, 2000, increasing child support from $500 per week to $700 per week and reverse and remand for further proceedings as to: (a) the denial of nonessential benefits to the child and custodial parent; and (b) the award of counsel fees to plaintiff. In all other respects, the orders under appeal are affirmed.[1]

I.
We address these important issues in the following factual context. Following a four-year marriage, plaintiff Laura L. Loro filed a dissolution complaint against defendant Gerald Del Colliano. After contentious litigation, the matter was resolved, and a judgment of divorce was entered on June 13, 1991. One child was born of the marriageDaria, born March 6, 1984and sole custody was awarded to plaintiff. Under the terms of the judgment, defendant was ordered to pay $1,500 per month in rehabilitative alimony for a period of two years as well as $375,000 in equitable distribution paid in several installments, with the balance to be paid over a ten-year period. Defendant was also required to pay $2,166.67 per month (or $500 per week) in child support. At the time of the entry of judgment, defendant earned approximately $630,000 per year.
The parties significantly disputed their respective relationships with Daria. Daria has suffered from various physical and emotional difficulties for several years, although as of March 1999, she apparently had made significant progress in relieving some of these problems. According to plaintiff, defendant rarely exercised his visitation rights, was controlling, insisted that Daria "do things his way," and, according to plaintiff, "Daria has felt abandoned emotionally and financially" by defendant.
Defendant described a different relationship. He claims that he loves his daughter, but asserts that plaintiff has dictated the terms of their relationship and "poisoned" Daria's attitude towards him, precluding a meaningful relationship. According to defendant, plaintiff has been a cause of Daria's emotional problems, and he alleges that at age fifteen, plaintiff still slept with Daria, caused Daria's eating disorder, interfered with his relationship with Daria, and caused Daria to miss significant time from school. Plaintiff denied these allegations and insisted that she "begged" defendant to become involved in Daria's life.
*802 Defendant owned a business called Inside Radio, Inc., "a Cherry Hill based company which publishes a daily publication about the radio broadcasting industry." He was also a former television and radio broadcaster, and served as a program director for two radio stations. As we have noted, at the time of the entry of the judgment of divorce, defendant earned in excess of $600,000 per year. During 1999, his earnings exceeded that amount, and his gross income approximated between $800,000 and $1,000,000. In either circumstance, defendant's ability to pay any reasonable amount of child support or any of the claims in issue here is not in serious dispute.
Defendant described his assets as including his four houses, valued at $3,000,003, with existing mortgages of $2,393,000, for a net value of $610,000.[2] He also had a money market account valued at $14,000, two stock accounts with a total value of $650,000 and an IRA valued at $243,000. The parties disputed the value of defendant's business; defendant argued the business had a value of $1,000,000, while plaintiff suggested a value approximating $15,000,000. Neither party disputed that whatever the value, the business generated a substantial salary for defendant, which was used to satisfy any support or other obligations imposed by the court. Defendant's only liabilities at the time he filed his Case Information Statement (CIS) were the mortgages noted above and the balance of his $375,000 equitable distribution obligation to plaintiff, which he satisfied in July 2000.
Plaintiff's financial picture was decidedly different from that of defendant. According to her January 1995 CIS, plaintiff earned $6,760 in income in 1993, and had $16,191 in unearned income. Her net annual income was $19,951, and her monthly gross income was $973.11. In 1994, plaintiff's gross earned income was $11,677.37. She listed total expenses of $5,764 per month that year, including $2,379.26 in shelter expenses, $442 in transportation costs, and $2,943 in personal expenses. Her assets included the home in which she lived, valued at $180,000, with a $140,000 mortgage, and various bank accounts and CDs valued at approximately $90,000. She had credit card debt of approximately $6,500.
As time progressed, according to plaintiff, her income was reduced. In her April 1999 CIS, plaintiff listed gross earned income in 1998 of $708, and unearned income of $10,079. From January 1999, through April 16, 1999, she earned $1,500. Her unearned income included mainly child support and equitable distribution payments. Plaintiff's credit card debt was slightly less than in 1994, but she had a $6,000 debt for a car that did not appear in her 1994 CIS.
Plaintiff listed her monthly expenses in her 1999 CIS as $2,348.58 for shelter, $769.92 for transportation, and $3,275 for personal expenses, for a total of $6,393.50. Her assets included her home and the bank accounts and CDs noted above; however, the value of the latter assets had declined from approximately $90,000 in 1995 to approximately $40,000 in 1999.
Pursuant to a September 30, 1999 court order, plaintiff submitted a revised schedule of monthly expenses describing additional expenses that, if borne by defendant, would allow Daria to share in his good fortune. Her revised budget totaled $8,175.58 per month. She explained that the increase was due to budgetary enhancements that would allow Daria to enjoy *803 the lifestyle to which she was entitled, given defendant's income and assets. The budget did not include other nonessential items, such as repairs to the family home, which would permit Daria to enjoy an even more comfortable lifestyle.
Plaintiff explained that she was able to meet her and Daria's monthly expenses by spending her liquid assets, thus causing the decrease in her bank accounts and CDs. Further, she had incurred large credit card bills, and used her equitable distribution payments to meet these expenses. Plaintiff feared that, ultimately, she and Daria might have to leave their home as it was becoming unaffordable.
On June 23, 2000, the judge issued his first order, which maintained plaintiff's custody and raised defendant's child support obligation to $700 per week. The judge rejected several specific requests that plaintiff had sought for Daria; however, the judge did order defendant to: (1) pay all of Daria's medical insurance and unreimbursed medical bills; (2) pay for a "reliable and insured" car and cell phone for Daria when she obtained her driver's license; and (3) pay for tickets to twenty Philadelphia Flyers hockey games. Defendant was also ordered to pay for plaintiff's attorneys' fees in an amount equal to that which he paid his own attorney.
On July 14, 2000, the judge issued an amended order in which he supplemented the June 23 order by noting that defendant's business was valued between one million and fifteen million dollars and indicated that "the exact amount of the defendant's income or the exact value of his business is not relevant." Rather, defendant could pay whatever the appropriate support was for a sixteen-year-old girl "without overindulging this child."
In August 2000, the judge denied plaintiff's motion for reconsideration of the child support award, for a plenary hearing, or to create an educational fund utilizing sanctions that had previously been imposed on defendant for failure to file a timely CIS.
On appeal, plaintiff asserts that the judge erred in fixing the quantum of child support. She claims that the judge failed to conduct a plenary hearing, did not make appropriate findings, failed to determine defendant's income, inappropriately considered the issue of overindulgence of the child and created a new standard by referring to the child having a "stake" in the award. Included in her assertion is that the judge improperly denied her claims for improvements to her home, which, she claims, would allow Daria to share in defendant's "good fortune." Plaintiff also challenged the judge's order permitting defendant to participate in Daria's counseling sessions. Defendant cross-appealed and claimed that the judge improperly denied a recusal motion. He challenged the quantum of support and joined with plaintiff in disputing the award of counsel fees.

II.
We first dispose of the "stake" issue and counseling issues raised by plaintiff and the recusal issue raised by defendant. We have carefully reviewed the record and conclude that none of these issues are meritorious or requires further discussion. R. 2:11-3(e)(1)(E). We note that even Dr. David M. Cordier, Daria's therapist, recognized the benefit of joint sessions with defendant, and we observe that contrary to plaintiff's view, the health care professionals have urged that such sessions include defendant as the judge so ordered. We find no error here.
We likewise reject plaintiff's argument regarding the lack of findings as to the quantum of support. While the judge's stated reasons are not a paradigm *804 of the findings required by R. 1:7-4, a culling of the text of the orders together with the extended colloquy with counsel over this multi-day oral argument provides a sufficient basis for the award entered. We will not overturn an award of child support unless we conclude that the award was manifestly arbitrary, unreasonable or contrary to the evidence. See Isaacson, supra, 348 N.J.Super. at 589, 792 A.2d 525; Foust v. Glaser, 340 N.J.Super. 312, 315-16, 774 A.2d 581 (App.Div.2001); Raynor v. Raynor, 319 N.J.Super. 591, 605, 726 A.2d 280 (App.Div.1999). We find no abuse of discretion regarding the award entered here; however, we again urge trial judges that the litigants, counsel and this court, in the event of review, are entitled to clearly delineated and specific findings addressing the statutory factors relevant to any award or modification of child support. See N.J.S.A. 2A:34-23a.

III.
In support of her application for what we have characterized as nonessential items of child support above and beyond the weekly support demand, plaintiff submitted generalized estimates for the repainting of her home, recarpeting of the home, repair of closets, replacement of Daria's bedroom furniture, an upgrade of her vehicle and replacement of the washer and dryer. The judge rejected her application concluding that she had failed to meet her burden to establish the necessity and cost of these items.
We recently restated the principles relevant to an application for increased child support, which apply with equal force to any application for nonessential items. In Isaacson, we said:
We have generally recognized that where the parties have the financial wherewithal to provide for their children, the children are entitled to the benefit of financial advantages available to them. We have characterized such circumstances as reflecting a parent's "good fortune" and have held that children are entitled to have their needs accord with the current standard of living of both parents, which may reflect an increase in parental good fortune. See Connell v. Connell, 313 N.J.Super. 426, 430, 712 A.2d 1266 (App.Div.1998); Italiano v. Rudkin (Italiano), 294 N.J.Super. 502, 506, 683 A.2d 854 (App.Div. 1996); Koelble v. Koelble, 261 N.J.Super. 190, 193, 618 A.2d 377 (App.Div.1992); Walton v. Visgil, 248 N.J.Super. 642, 649, 591 A.2d 1018 (App.Div.1991); Zazzo v. Zazzo, 245 N.J.Super. 124, 130, 584 A.2d 281 (App.Div.1990), certif. denied, 126 N.J. 321, 598 A.2d 881 (1991). Children are entitled to not only bare necessities, but a supporting parent has the obligation to share with his children the benefit of his financial achievement. See Dunne v. Dunne, 209 N.J.Super. 559, 567, 508 A.2d 273 (App.Div.1986).
[348 N.J.Super. at 579-80, 792 A.2d 525.]
We addressed the unique circumstances encountered by a judge when considering the issue of child support in the context of a high earner. We noted:
Where our attention is focused on the unique circumstances of the high-income earner whose ability to pay increased child support is not in issue, the dominant guideline for consideration is the reasonable needs of the children, which must be addressed in the context of the standard of living of the parties. The needs of the children must be the centerpiece of any relevant analysis. Other economic-dependant factors are of less significance, as the high earner's concession of ability to pay has essentially limited the consideration of such economic-dependent issues. However, any *805 consideration of needs must factor in the age and health of the children, as well as the other assets or income of the children, including any debts. Obviously, when considering the age factor, the needs of an infant child are distinctly different from the needs of teenage children, as is the case here.
Determining a child's needs in these unusual financial circumstances presents unique problems. First, a balance must be struck between reasonable needs, which reflect lifestyle opportunities, while at the same time precluding an inappropriate windfall to the child or even in some cases infringing on the legitimate right of either parent to determine the appropriate lifestyle of a child. See Laura W. Morgan, Child Support and the Anomalous Case of the High-Income and Low-Income Parent: The Need to Reconsider What Constitutes "Support" in the American and Canadian Child Support Guideline Models, 13 Can. J. Fam. L. 161, 195 (1996). This latter consideration involves a careful balancing of interests reflecting that a child's entitlement to share in a parent's good fortune does not deprive either parent of the right to participate in the development of an appropriate value system for a child. This is a critical tension that may develop between competing parents. Ultimately, the needs of a child in such circumstances also calls to the fore the best interests of a child.
[Id. at 581-82, 792 A.2d 525 (footnote omitted).]
Finally, we determined that a child's nonessential needs must be both reasonable and take into consideration the standard of living of the parties as well as parental good fortune. Id. at 582, 792 A.2d 525.
We first observe that unlike Isaacson, this was not a case where the changed circumstances were premised on defendant's substantial increase in income. Defendant's income qualified as that as a high earner when the original judgment was entered. He was earning approximately $600,000 per year and this figure has increased to one million dollars per year. At both points in time, he was able to satisfy any reasonable award of child support and provide support for nonessential items. The change in circumstances arise from the maturation of Daria over a nine-year period. Included within the maturation process are considerations of her health problems.
In concluding that the quantum of child support should be increased to $700 per week, or $36,400 per year, the judge
carefully considered the statutory authority found in N.J.S.A. 2C:34-23(a) and the relevant case law Zazzo v. Zazzo, 245 N.J.Super. 124, 584 A.2d 281 (App.Div.1990) and Walton v. Visgil, 248 N.J.Super. 642, 591 A.2d 1018 (App.Div. 1991). Daria is entitled to share in her father's good fortune. A child support award in the amount of $700 a week or $36,400 a year, along with Flyers tickets, confers onto Daria the benefits of her father's good fortune. In addition, upon receiving her driver's license, defendant shall provide Daria with a reliable and insured car, as well as a cell phone with at least 200 minutes of time per month. Anything beyond the 200 minutes shall be Daria's responsibility. Also, assuming Daria goes to college, she should know that the college expenses shall be paid for primarily by her father. While there may be additional expenses beyond $700 a week, the record is inadequate for any increase beyond the $200 a week.
*806 In asserting her claim for addition support, including nonessential needs, plaintiff focused on defendant's income and the value of his business. Defendant is engaged in a business enterprise that generates at least one million dollars per year in income. Plaintiff challenged the valuation of his business asserting that it was in excess of fifteen million dollars, while defendant claims the value is approximately one million dollars. The trial judge determined that the exact value was irrelevant. We agree that under the facts presented here, the critical issue was defendant's income stream rather than the value of the enterprise generating the income. This was an application for an increase in child support and did not involve issues of equitable distribution or other matters implicating the value of the business. In general, the value of a business, especially in the case of a closely-held corporation where values require extensive analysis, is less relevant than the income generated by the enterprise. See Brown v. Brown, 348 N.J.Super. 466, 477, 792 A.2d 463 (App.Div. 2002). Child support will be based on income rather than on net worth. While, in some circumstances net worth may be relevant, we see little relevance here to formulating an appropriate child support award for a seventeen-year-old child who will soon be reaching majority and where the income in question approximates $1,000,000 per year.
An award of nonessential expenses to allow a child to benefit from the good fortune of a parent including plaintiff's demands here requires further discussion. A child is entitled to share in a parent's good fortune and that may include bestowing benefits of nonessential items on the child to reflect such good fortune. Here, the judge recognized that principle and awarded Philadelphia Flyer tickets, an insured vehicle and a cell phone. The judge denied plaintiff's demands for improvements to her home concluding that plaintiff had not met her burden in that regard of producing sufficient documentation to support her claim. We do not find fault with that conclusion based on plaintiff's first submission; however, her motion for reconsideration included documentation that certainly required analysis by the judge.
We have held that "the law is not offended if there is some incidental benefit to the custodial parent from increased child support." Isaacson, supra, 348 N.J.Super. at 584, 792 A.2d 525. As we noted in Walton v. Visgil:
In short, we see no reason why, because of their mother's impecuniousness, these children of a very successful father should be required to live in a house which is in a state of disrepair, be transported in an old or unreliable vehicle or go without a necessary new furnace. Their father's income entitles them to better, and the fact that their mother may benefit incidentally from the component for which the father pays is of no moment.
[248 N.J.Super. 642, 650, 591 A.2d 1018 (App.Div.1991) (citing Zazzo v. Zazzo, 245 N.J.Super. 124, 131, 584 A.2d 281 (App.Div.1990), certif. denied, 126 N.J. 321, 598 A.2d 881 (1991)).]
See also In re Hubner, 94 Cal.App.4th 175, 114 Cal.Rptr.2d 646, 655 (2001) (discussing a child's entitlement to be "supported in a style and condition consonant with the position in society of its parents").
In Isaacson, we generally delineated the parameters of the consideration of "incidental benefits" and the weighing necessary to reach an appropriate award where there may be a benefit to the custodial parent.
This, too, requires the judge to balance the needs of the child. Incidental benefit *807 is not offensive, but overreaching in the name of benefitting a child is. To expand on the analogy set forth in Walton, we can easily perceive different considerations of incidental benefit applying where an application for increased child support including repairs to a home is made when the child is approaching majority, as opposed to such an application where the child or children are younger. A custodial parent seeking an increase in child support to provide for adequate transportation for children when the children are young and not of driving age is decidedly different than an application made when the child is seventeen years old. These, too, are factors which must be considered by the judge. Judges, of course, must be conscious that in balancing the award with the incidental benefit to the custodial parent, the lifestyle of the supporting and custodial parent may be so disparate that a disconnect between financial resources available to a child and the lack of similar resources available to a custodial parent may generate other issues.
[348 N.J.Super. at 585, 792 A.2d 525.]
Applying these principles here, we conclude that the judge was obligated to consider plaintiff's requests for additional nonessential items. In considering these matters, the judge must determine if the primary recipient of the benefit is plaintiff or the child and whether the benefit to plaintiff is "primary" or "incidental." The child is entitled to live in an appropriate, clean and well-maintained home, which may require a contribution to the cost of repairs, long-term maintenance and even, where relevant, capital improvements. Certainly, a child is entitled to appropriate furniture and personal items commensurate with her age and the ability of the supporting parent to pay for such items, which is not an issue here.
A different result may ensue with regard to other demands where the primary beneficiary appears to be plaintiff rather than the child. For example, plaintiff's claim for an upgraded vehicle for herself must be viewed with some skepticism where the defendant is providing a separate vehicle for the child. The same consideration must be attendant to an analysis of additional increments for vacations. Here plaintiff sought four thousand dollars for vacations for herself and Daria. She later indicated that she had rented a summer home for eight thousand dollars for herself, Daria and a nephew. In assessing whether such additional item is an incidental benefit to plaintiff or primarily for herself and a nephew and incidental to Daria, the judge must consider the nature of the vacation expenditure, plaintiff's contribution to the vacation, the circumstances of the nephew's participation and other matters relevant to the underlying inquiry.
A child may benefit from a parent's good fortune and a custodial parent may be the incidental beneficiary of such good fortune, but a custodial parent cannot through the guise of the incidental benefits of child support gain a benefit beyond that which is merely incidental to a benefit being conferred on the child. This is especially true when the facts, as here and in Isaacson, reveal that the supporting parent's alimony obligation has ended. The award of nonessential additions to child support requires a careful weighing and determination as to who is the primary and who is the incidental beneficiary of such support.
We conclude here that such an analysis was not made. We have indicated that we are satisfied plaintiff produced sufficient information, albeit on the motion for reconsideration, for the judge to consider her claims for nonessential benefits ostensibly for the child. We, thus, remand this matter *808 to the Family Part for further proceedings on this issue. The judge may determine that he needs additional information to consider the issue and may, if appropriate, order a plenary hearing to consider the issue. If sufficient supplemental information is forthcoming, the judge may determine the issue on the submissions of counsel and make appropriate findings. We leave the issue of the necessity of a plenary hearing on the issue of incidental benefits to the sound discretion of the trial judge.
As to additional documentation required, we have specifically mandated in Isaacson, supra, 348 N.J.Super. at 585-86, 792 A.2d 525, that the supporting parent must produce his tax returns and a CIS. The record before us suggests that the lifestyle of the parties, and especially defendant, are well-known to both sides so, unless either party can demonstrate a sufficient basis for additional discovery, we perceive little need for additional inquiry beyond that described in Isaacson. Certainly, further inquiry might be necessary as to the exact nature and necessity of plaintiff's demand for nonessential items, but again, we leave that determination to be made by the judge on remand.

IV.
Both parties have addressed the issue of counsel fees. Plaintiff asserts that the judge erred in the fee award in two respects. First, he ordered defendant to pay plaintiff the same amount of fees defendant's attorney charged him, without analyzing the relevant factors. Second, the judge erred in permitting defendant to apply a discovery sanction towards payment of his fee obligation to plaintiff. Defendant cross-appeals claiming that the award was too high. We conclude that a remand is appropriate to consider the issue of counsel fees, but affirm the judge's order regarding the allocation of sanctions.
N.J.S.A. 2A:34-23 provides for the award of counsel fees. In considering such an application, a judge must examine the "factors set forth in the court rule on counsel fees, the financial circumstances of the parties, and the good or bad faith of either party." N.J.S.A. 2A:34-23. R. 5:3-5(c), which permits an award of legal fees in a matrimonial actions, sets forth nine factors to be considered in making such an award. These include:
(1) the financial circumstances of the parties; (2) the ability of the parties to pay their own fees or to contribute to the fees of the other party; (3) the reasonableness and good faith of the positions advanced by the parties; (4) the extent of the fees incurred by both parties; (5) any fees previously awarded; (6) the amount of fees previously paid to counsel by each party; (7) the results obtained; (8) the degree to which fees were incurred to enforce existing orders or to compel discovery; and (9) any other factor bearing on the fairness of an award.

[R. 5:3-5(c).]
See also R. 4:42-9; R.P.C. 1.5(a). The application of these factors and the ultimate decision to award counsel fees rests within the sound discretion of the trial judge. Yueh v. Yueh, 329 N.J.Super. 447, 460, 748 A.2d 150 (App.Div.2000); Guglielmo v. Guglielmo, 253 N.J.Super. 531, 544-45, 602 A.2d 741 (App.Div.1992).
In his June 23, 2000 order, the judge held that "[d]efendant is ordered to pay the plaintiff's attorney's fees. Per R. 4:42-9(a), R.P.C. 1.5, and R. 5:3-5(a), the amount is set for exactly the same amount that the defendant's attorney charged his client. Defense counsel shall make available to plaintiff's counsel a copy of his fee certification."
*809 We conclude that a remand is required, as the judge made absolutely no findings regarding any of the factors required by the rule including, relevant here, the financial circumstances of the parties and "the degree to which fees were incurred to enforce existing orders or to compel discovery" or the good or bad faith of the parties. R. 5:3-5(c).
We note that defendant was not forthcoming in his production of documentation necessary for plaintiff to prosecute her application for increased child support. Equally as relevant is that plaintiff pursued issues such as the value of defendant's business, which were only tangentially relevant to the narrow issue before the courtthe modification of child supportand waited until her motion for reconsideration before submitting sufficient documentation for nonessential claims. Simple omnibus references to the rules without sufficient findings to justify a counsel fee award makes meaningful review of such an award impossible, thus necessitating a remand.
We reiterate the standards for the award of counsel fees that we enunciated in Chestone v. Chestone, 322 N.J.Super. 250, 257, 730 A.2d 890 (App.Div.1999), where, in reducing a counsel fee award, we observed:
While the initial focus may appropriately be directed to the time expended in pursuing the litigation, that is only one of the factors to be considered. The fee should not be fixed simply by taking the total time assertedly expended by counsel and by multiplying the total number of hours by the charges fixed in the retainer agreement made between the requesting party and counsel, to which charges the adverse party never consented or agreed. In reviewing the requested allowance, the judge must critically review the nature and extent of the services rendered, the complexity and difficulty of the issues determined, and the reasonableness and necessity of the time spent by counsel in rendering the legal services. In matrimonial actions, more so than most other areas in which counsel fees are awarded, the expenditure of attorney time is of less importance.
[(Citations omitted) (emphasis added).]
While we reject an award of counsel fees based solely on the fees charged by an adversary, comparable charges for like services, such as, for example, actual time spent at a deposition, may be relevant where there are challenges to a particular charge. Cf. Cohen v. Brown University, 43 Fed. R. Serv.3d 1017 (D.R.I.1999) (collecting cases addressing whether the fees and hours incurred by one party are relevant to an application for fees sought by another party). This may be one factor for a court to consider on a fee application, but it cannot be the only factor as was the case here.
We observe with concern but no further comment that the fees and disbursements incurred and demanded by both litigants exceeded $80,000 for what was primarily a motion for a modification of child support. No testimony was taken, and the matter was resolved in motion practice. Defendant's ability to pay was never in dispute, and while the details of his financial wherewithal were contested, his lifestyle and that of plaintiff were also not seriously disputed. We make these observations considering our earlier discussion in Isaacson, where we reflected that these applications cannot be conducted in the same mode and manner as if equitable distribution or other issues requiring expansive litigation costs were in issue. 348 N.J.Super. at 586, 792 A.2d 525.
*810 Finally, we affirm the judge's application of the sanctions to defendant's counsel fee obligation to plaintiff. Such a ruling was discretionary, and we find no basis for our intervention. R. 2:11-3(e)(1)(E).
Affirmed in part; reversed and remanded in part.
NOTES
[1] While the judge also failed to fully consider the issue of custody, we were advised at oral argument that custody is no longer in dispute.
[2] Husband sold his Medford home in July 2000, and used the proceeds to pay off his equitable distribution obligation to plaintiff noted above.