**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3531-17T1

JOSEPH R. IANNIELLO,

     Plaintiff-Respondent,

v.

JENNIFER M. PIZZO,

     Defendant-Appellant.

_____

Argued April 3, 2019 – Decided June 7, 2019

Before Judges Accurso, Vernoia and Moynihan.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Somerset County, Docket No. FM-18-0939-09.

Thomas Darren Baldwin argued the cause for appellant (Budd Larner, PC, attorneys; Thomas Darren Baldwin and Alex John Otchy, on the briefs).

Mark H. Sobel argued the cause for respondent (Greenbaum Rowe Smith & Davis, LLP, and Skoloff & Wolfe, PC, attorneys; Mark H. Sobel and Richard H. Singer, Jr., of counsel; Mark H. Sobel and Lisa B. Di Pasqua, on the brief).

PER CURIAM

In this post-judgment matrimonial action, defendant Jennifer M. Pizzo appeals from a Family Part order, issued after a plenary hearing, denying her request to increase plaintiff Joseph R. Ianniello's child support obligation for the parties' two sons from $10,000 to $75,000 per month. Because we are convinced the court's findings of fact are supported by sufficient credible evidence and the court did not abuse its discretion in determining defendant failed to establish an increase in child support is warranted to meet the reasonable needs of the children, we affirm.

I.

Married in 2000, the parties have two sons, born in 2004 and 2008. The parties' April 2011 dual judgment of divorce incorporated a marital settlement agreement providing for defendant's receipt of equitable distribution including stock options valued at $5.5 million, $10,000 per month in limited duration alimony for six years ending on March 1, 2017, and $10,000 per month in child support. The parties agreed plaintiff's alimony obligation would continue even if defendant remarried. Defendant is the designated parent of primary residence and the marital settlement agreement provides plaintiff with overnight parenting time on Wednesday evenings and alternating weekends.

2

Following the divorce, defendant had a son with her new husband. Defendant, her new husband, and her three children reside in a $2.6 million home she and her new husband had custom-built to their specifications in Harrison, New York, with proceeds from the equitable distribution from her divorce from plaintiff. Defendant is not employed, is a stay-at-home mother to her three children and her redacted income tax returns revealed over $1.5 million in unearned income in 2016.

Plaintiff is a high-level executive at a large corporation, who reported income in excess of $14 million in 2011, $23 million in 2013, $31 million in 2014, $24 million in 2015 and $19 million in 2016. He enjoys corporate benefits including the use of a private jet, stock option awards and the use of a corporately owned multimillion-dollar residence in California for his frequent stays there for business. He is remarried to a retired corporate executive and owns a $6.1 million condominium in New York City, an $11.5 million home in Greenwich, Connecticut, and an estimated $8 million home in Big Sky, Montana. He enjoys a private country club membership, which he has used on only one occasion during the two years prior to trial, and a membership in an exclusive ski and golf club in Montana.

3

In 2016, defendant filed a motion to increase plaintiff's child support obligation from $10,000 to $75,000 per month. Defendant also sought an order modifying the marital settlement agreement to require that plaintiff pay 100 percent of the children's unreimbursed medical expenses, vehicle and related expenses when the children attain driving age, all costs associated with the children's attendance at private primary and secondary schools, and for the costs associated with a $20 million life insurance policy on plaintiff's life with the proceeds to be placed in trust for the two children with defendant as trustee. Defendant claimed that an increase in plaintiff's income constituted a change in circumstances warranting the modification of his financial obligations under the marital settlement agreement.

Plaintiff argued his income had not increased substantially since the parties' divorce, that the $10,000 per month child support obligation was sufficient to cover the reasonable needs of the children and defendant sought the increase in child support only because her alimony was about to terminate. He admitted he has the income and resources to afford a $75,000 monthly child support obligation, but argued the current obligation is sufficient to provide for the reasonable needs of his two sons. As noted by the trial court, "[i]t is [p]laintiff's position that no one could provide a reality-based, diligent analysis

4

of a child support demand of $900,000 per year for two children ages [thirteen] and [ten]."

The court entered an order finding defendant made a sufficient showing of changed circumstances warranting a plenary hearing on defendant's motion for a child support modification. The court denied without prejudice defendant's application for attorney's fees. The court ordered that defendant file the budget required under Walton v. Visgil, 248 N.J. Super. 642, 650-51 (App. Div. 1991), and directed that a plenary hearing be scheduled on defendant's child support modification motion.

The court conducted the plenary hearing, at which the only witnesses were plaintiff and defendant. In a detailed written opinion following the hearing, the trial judge summarized the testimony and evidence presented by the parties and found defendant failed to sustain her burden of demonstrating "that the children's reasonable needs are not being met by the $10,000 per month in child support that [p]laintiff presently provides for their children."

The judge explained that "[d]efendant was unable to provide . . . any reasonable or diligent analysis[] as to how she derived her budget for the children's prospective monthly expenses." More particularly, the judge noted defendant's testimony that her budget and analysis is based on her consultation

with what she described as a "divorce concierge," who assisted defendant in developing putative lifestyle costs based on "what could be possible for . . . [the children] to enjoy" if they "had . . . an unlimited amount of funds."

The judge further cited examples of what he characterized as the "impropriety of [defendant's] requests." More than one third of the $65,000 increase in monthly child support sought by defendant consisted of $22,250 for the purchase of a 10,000-square-foot house in a gated community nearby defendant's current home.[1] Defendant testified the home would be double the size of her current home, provide the parties' two children with a larger yard in which to play and would be comparable to plaintiff's Connecticut home, which was similarly in a gated community. She planned to move into the new home with her current husband and their child, and the parties' two sons. The judge found defendant failed to provide any evidence her current home, which was custom-built to her specifications only six years earlier, includes a "six-figure swimming pool complex" and was valued at $2.6 million, did not meet the needs of the parties' two sons, other than defendant's opinion it would be desirable for the children to have a larger yard.

---

[1] Defendant allocated the $22,250 between $16,000 per month for a mortgage and $6,250 in real estate taxes.

The judge also noted that defendant's proposed child support budget included a $15,000 monthly sum, or $180,000 per year, for vacations and plaintiff's contribution, through an additional increase in his monthly child support obligation, for the purchase of a vacation home in the Hamptons in New York. The judge found defendant "recited a veritable wish list . . . as to what she believed the children's reasonable 'needs' were," including a family membership at the Westchester Country Club, tickets to see the New York Knicks, World Series tickets, "a bigger home in a gated community, the purchase of a house in the Hamptons, and European ski vacations." The judge observed that "[a]ll of these items are not 'reasonable needs' for a [thirteen] and [ten] year old, but are adult-centered activities that would primarily benefit [d]efendant and her [new] husband."

The judge further found that plaintiff earned in excess of $19 million in 2016, and defendant reported over $1 million in unearned income during that year.[2] The judge explained that application of the child support guidelines yielded a $508 per week child support obligation, which required supplementation due to the parties' incomes based on an analysis of the factors

---

[2] The court noted that defendant's tax returns revealed income in excess of $2 million in 2011, $1.4 million in 2012, $3.8 million in 2013, $380,000 in 2014, $1 million in 2015, and $1.5 million in 2016.

required under N.J.S.A. 2A:34-23(a). The court considered, and made findings as to, each of the factors.

The judge found that all of the reasonable needs of the children are being met by plaintiff's child support payment and defendant's contribution to their care and support. The judge noted the children live in a multimillion-dollar home, are driven in a late model Lincoln Navigator and are provided food from specialty grocers. The evidence showed the children vacation with their parents four times per year, have country clubs available for them to play golf, and attend sports camps. The judge also noted plaintiff's agreement to pay 100 percent of the children's unreimbursed medical expenses, private school and college costs, and seventy-five percent of their extracurricular activity expenses. The judge found the "children want for nothing and their needs are being met."

The judge acknowledged that "[p]laintiff is not just a 'high income earner,' he is a 'stratospheric income earner,'" but that based on a consideration of the factors in N.J.S.A. 2A:34-23(a) and defendant's testimony and evidence, "[d]efend[an]t's view of her children's needs and lifestyle amounted to 'an open-ended wish list'" that was "designed to enhance her own lifestyle and provide her with far more than an incidental benefit" from the proposed child support obligation. The judge found defendant's request "was nothing more than a wish

list to share in the lifestyle of her husband whom she divorced in 2011" and "was not supported by a demonstrated need of the children." The judge concluded that "[b]ecause . . . [d]efendant . . . failed to demonstrate that any needs of the parties' children [have] remained unmet by the current child support of $10,000 per month . . . the present $10,000 per month award remains appropriate."

The judge also addressed the parties' respective claims that the other failed to provide complete case information statements. The judge noted plaintiff's claim defendant's case information statement does not include a budget showing how she spends the $10,000 in monthly child support she currently receives, and therefore she "obfuscated the fact that the . . . children do not want for anything." The judge also noted defendant's claim that plaintiff did not include a budget in his case information statement in an attempt to "avoid the [c]ourt delving into his 'lavish lifestyle.'"

The judge observed that parties litigating a child support obligation are required to supply complete case information statements, but explained there was significant testimony concerning plaintiff's and defendant's lifestyles during the five-day plenary hearing, including detailed information about their respective incomes. The judge found that the "income and asset information, while not tidily summarized in a [c]ase [i]nformation [s]tatement," provided

"enough financial information about the parties' level of income to properly and adequately 'assume' that they live a lifestyle 'commensurate with their income.'" Thus, the judge found defendant's failure to provide a complete case information statement was not fatal to her child support modification request, and that plaintiff's incomplete case information statement was not "overly problematic because" there was sufficient other evidence allowing an assessment of plaintiff's lifestyle, including his maintenance of two opulent residences and taking luxury vacations. The judge did "not excuse the strategic gamesmanship on both sides in failing to provide full and complete [c]ase [i]nformation [s]tatements," but concluded he had "more than enough financial information from both sides to address the setting of child support" as otherwise detailed in his opinion.

The judge also denied defendant's request for attorney's fees, finding "the unreasonableness of [d]efendant's . . . positions pervaded . . . these proceedings." The judge further considered and made findings as to each of the factors pertinent to an award of attorney's fees under Rule 5:3-5(c) and N.J.S.A. 2A:34-23, and concluded no fees should be awarded to either party.

The judge entered an order denying defendant's motion for modification of the $10,000 per month child support obligation, denying defendant's request

for an increase in plaintiff's life insurance obligation, denying the parties' requests for counsel fees and directing that plaintiff shall continue to be responsible for payment of 100 percent of the children's unreimbursed medical expenses, private school costs, college tuition and expenses, and seventy-five percent of the expenses for the children's tutors, camps and extracurricular activities. This appeal followed.

Defendant offers the following arguments for our consideration:

POINT I

THE COURT FAILED TO PROPERLY CONSIDER PREVAILING CHILD SUPPORT LAW IN HIGH INCOME EARNER SITUATIONS.

POINT II

THE COURT ABUSED ITS DISCRETION IN DENYING DEFENDANT COUNSEL FEES ON HER APPLICATION BROUGHT ON BEHALF OF THE CHILDREN.

POINT III

THE TRIAL COURT'S DECISION REFLECTS A BIASED VIEW AGAINST DEFENDANT AND HER REQUEST FOR INCREASED CHILD SUPPORT PURSUANT TO PREVAILING LAW SUCH THAT REMAND TO A DIFFERENT JUDGE FOR FURTHER CONSIDERATION CONSISTENT WITH THIS COURT'S REQUESTED OPINION IS WARRANTED.

## II.

Our scope of review is limited. A decision to modify child support is reviewed for an abuse of discretion. J.B. v. W.B., 215 N.J. 305, 325-26 (2013). "[W]e accord great deference to discretionary decisions of Family Part judges." Milne v. Goldenberg, 428 N.J. Super. 184, 197 (App. Div. 2012). Moreover, although we "do not disturb the factual findings and legal conclusions of the trial judge unless we are convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice," Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 484 (1974) (citations omitted), we accord considerable deference to the Family Part's findings of fact because family courts have "special jurisdiction and expertise in family matters," Cesare v. Cesare, 154 N.J. 394, 413 (1998). "[W]e do not pay special deference to its interpretation of the law." D.W. v. R.W., 212 N.J. 232, 245 (2012).

Defendant argues the court erred by denying her request for a child support modification because it misapplied the legal standard applicable to a determination of child support for high income earners. Based on our review of the record and the court's findings, we disagree.

A-3531-17T1

An existing child support obligation may be modified upon a sufficient "showing of changed circumstances warranting relief." Isaacson v. Isaacson, 348 N.J. Super. 560, 579 (App. Div. 2002); N.J.S.A. 2A:34-23; see also Lepis v. Lepis, 83 N.J. 139, 157 (1980). A showing of substantial increase in the non-custodial parent's income compared to that parent's income at the entry of the award is a changed circumstance sufficient to modify the child support award. See Isaacson, 348 N.J. Super. at 579.

When "an application to . . . modify child support is considered by the court," it is governed by this state's Schedule for Child Support (Guidelines). R. 5:6A. However, "[i]f the combined net income of the parents is more than $187,200 per year, the court shall apply the [G]uidelines up to $187,200 and supplement the [G]uidelines-based award with a discretionary amount based on the remaining family income . . . and the factors specified in N.J.S.A. 2A:34-23." Child Support Guidelines, Pressler & Verniero, Current N.J. Court Rules, Appendix IX-A to R. 5:6A, ¶ 20(b) at www.gannlaw.com (2019); see also Caplan v. Caplan, 364 N.J. Super. 68, 85-86 (App. Div. 2003).

Where, as here, plaintiff's and defendant's combined incomes exceed the Guidelines' threshold, the court must determine the "reasonable needs" of the children. Caplan, 364 N.J. Super. at 86. "Children are entitled to not only bare

necessities, but a supporting parent has the obligation to share with his children the benefit of his financial achievement." Isaacson, 348 N.J. Super. at 580. Indeed, "[w]e have characterized such circumstances as reflecting a parent's 'good fortune' and have held that children are entitled to have their needs accord with the current standard of living of both parents, which may reflect an increase in parental good fortune." Id. at 579-80. In Isaacson, we considered the "unique problems" presented in determining the needs of a child whose parents' combined income exceeded the Guidelines' maximum threshold. Id. at 581-85. There, the non-custodial parent conceded "that he could pay any amount of child support ordered by the judge." Id. at 570.

In determining the needs of the children of high income earning parents, a court must strike a balance "between reasonable needs, which reflect lifestyle opportunities, while at the same time precluding an inappropriate windfall to the child or even in some cases infringing on the legitimate right of either parent to determine the appropriate lifestyle of a child." Id. at 582. "Any increase in a child support award must be made after consideration of the relevant statutory criteria for such award pursuant to N.J.S.A. 2A:34-23(a)." Id. at 580.

By sharing a parent's good fortune, the reasonable needs of the child "may include . . . nonessential items . . . [which] reflect such good fortune." Loro v.

<u>Colliano</u>, 354 N.J. Super. 212, 223 (App. Div. 2002). The custodial parent, however, bears the burden of "establishing the reasonableness" of such nonessential expenses. <u>Strahan v. Strahan</u>, 402 N.J. Super. 298, 311 (App. Div. 2008) (quoting <u>Accardi v. Accardi</u>, 369 N.J. Super. 75, 88 (App. Div. 2004)). "A mere listing of the purported expenses, without more, is insufficient," <u>Accardi</u>, 369 N.J. Super. at 87, and a non-custodial parent's good fortune does not provide "an open-ended opportunity for a parent to develop a 'wish-list' for a child that does not comport with the child's best interests; 'needs' is a relative factor in appropriate upbringing of a child and a reflection of the lifestyle of the parents," <u>Isaacson</u>, 348 N.J. Super. at 583. "Judges must be vigilant in providing for 'needs' consistent with lifestyle without overindulgence." <u>Ibid.</u>

"By way of example, the fact that a parent may be driving a luxury automobile does not mean that a child of driving age will be entitled to a similar luxury automobile," but a parent's good fortune "may enable a child with a need for an automobile to enjoy the luxury of an automobile, suitable and appropriate for a teen-age driver and sufficient to meet the child's transportation needs." <u>Ibid.</u> Similarly, in <u>Loro</u>, we found appropriate the trial judge's approval of "Philadelphia Flyers tickets, an insured vehicle and a cell phone" for a non-

15

custodial parent's seventeen-year-old daughter where the non-custodial parent's income was approximately one million dollars. 354 N.J. Super. at 223-24.

We recognize that some nonessential expenses may incidentally benefit the custodial parent as well. Id. at 225. "[T]he law is not offended if there is some incidental benefit to the custodial parent from increased child support payments," Isaacson, 348 N.J. Super. at 584, but the trial judge "must determine if the primary recipient of the benefit is [the custodial parent] or the child and whether the benefit to [the custodial parent] is 'primary' or 'incidental,'" Loro, 354 N.J. Super. at 225 (viewing "with some skepticism" the custodial parent's "claim for an upgraded vehicle for herself" where the child support award provided for a separate vehicle for the child). "[E]xpenses, such as lessons, summer camp, club dues, sports, and personal hygiene costs are more easily identifiable as attributable to the children." Caplan, 364 N.J. Super. at 87.

In Walton v. Visgil, for example, we noted that "children of a very successful [non-custodial parent] should [not] be required to live in a house which is in a state of disrepair, be transported in an old or unreliable vehicle or go without a necessary new furnace" despite the custodial parent's incidental benefit. 248 N.J. Super. at 650. "The child is entitled to live in an appropriate, clean and well-maintained home, which may require a contribution to the cost

16

of repairs, long-term maintenance and even, where relevant, capital improvements."  Loro, 354 N.J. Super. at 225; cf. Strahan, 402 N.J. Super. at 311 ("There was no explanation as to why the children needed $30,000 worth of landscaping per year, or what was included in $3000 for 'audio visual' expenses per year.  Defendant listed $36,000 a year for the children's 'equipment and furnishings' without explaining what that covered.").

Courts in other states have similarly considered the needs of children whose parents' income exceeds child support guidelines.  In Miller v. Schou, the Florida Supreme Court noted that although "[t]he child of a multimillionaire would be entitled to share in that standard of living—for example to attend private school or to participate in expensive extracurricular activities—and would accordingly be entitled to a greater award of child support," that does not mean such a child "should be awarded enough support to be driven to school each day in a chauffeured limousine."  616 So.2d 436, 438 (Fla. 1993).  In Downing v. Downing, the Kentucky Court of Appeals held that "[b]eyond a certain point, additional child support serves no purpose but to provide extravagance and an unwarranted transfer of wealth."  45 S.W.3d 449, 456 (Ky. Ct. App. 2001).  Although that court recognized that "to some degree children have a right to share in each parent's standard of living," the court held "child

support must be set in an amount which is reasonably and rationally related to the realistic needs of the children." Ibid.; see also In re Marriage of Patterson, 920 P.2d 450, 455 (Kan. Ct. App. 1996) ("Practitioners dealing with situations such as this sometimes refer to the 'Three Pony Rule.' That is, no child, no matter how wealthy the parents, needs to be provided more than three ponies."). Therefore, in determining the reasonable needs of the child, a trial judge must "balance needs and opportunity to satisfy those needs . . . in a sensible manner consistent with the best interests of the child." Isaacson, 348 N.J. Super. at 584.

Here, the testimony and evidence concerning the respective lifestyles of the parties and their two children provided the context for the court's analysis and findings concerning the children's reasonable needs. The evidence showed the children enjoy the benefits of their parents' considerable financial resources, live in multimillion-dollar homes, take four luxurious vacations each year, and have full and apparently unfettered access to camps, sports, lessons and other activities that would be expected to be of interest to children of their ages. Plaintiff pays 100 percent of the children's unreimbursed medical expenses and agreed to pay their private school and college costs, and seventy-five percent of costs for their extracurricular activities. The court's finding that the children "want for nothing" is supported by the record; indeed, there is no evidence that

the children have inquired about, asked for or expressed an interest in anything of which they have been deprived due to the alleged insufficiency of plaintiff's child support obligation.

The court found that the $65,000 monthly increase in child support sought by defendant is untethered to any evidence showing that the reasonable needs of the children, even considering plaintiff's lifestyle, are not being met. See id. at 589 (noting that the defendant failed to demonstrate "the children's needs . . . were not being satisfied absent the [requested] increased child support"). The finding is supported by the evidentiary record. Rather than present evidence establishing the children's reasonable needs, defendant explained the requested increase in child support is the product of reverse engineering; she consulted with a divorce concierge and developed a budget not based on evidence of the children's needs or best interests, but instead founded on the premise that the children are entitled to a "sky is the limit" lifestyle because plaintiff's substantial income is sufficient to pay for it. There is an "important distinction between needs commensurate with lifestyle and overindulgence." Id. at 584. Defendant ignored that distinction here.

As correctly recognized by the trial court, defendant failed to sustain her burden of establishing that the reasonable needs of the children, even after

19

plaintiff's lifestyle is considered, were not being met by, or required an increase in, the already substantial $10,000 per month child support payment. Strahan, 402 N.J. Super. at 310-11; Isaacson, 348 N.J. Super. at 589. Defendant's testimony described little more than an extravagant "wish-list" unrelated to the children's best interests, Isaacson, 348 N.J. Super. at 583, consisting of a country club membership for her family, a home double the size of the $2.6 million home in which she and her family currently reside, a vacation home in the Hamptons and $15,000 per month for vacations. Lacking competent evidence establishing that the reasonable needs of the parties' two sons support those requests, we discern no basis to reject the court's conclusion that the primary and intended recipients of those benefits are not the children, but instead are defendant and her new husband. See Strahan, 402 N.J. Super. at 310; Loro, 354 N.J. Super. at 225-26. Indeed, it is of special concern that defendant is the primary beneficiary of her requests because she no longer has a right to alimony. Strahan, 402 N.J. Super. at 310.

We are satisfied the court correctly engaged in the requisite analysis of defendant's burden, including its consideration of the factors under N.J.S.A. 2A:34-23(a), and that its findings of fact are supported by sufficient credible evidence. We defer to those findings, and to the court's specialized knowledge

in Family Part matters, see Cesare, 154 N.J. at 413, and are convinced its denial of defendant's request for an increase in child support is neither arbitrary, capricious nor unreasonable. See J.B., 215 N.J. at 326.                    .

We are not persuaded by defendant's claim that plaintiff's failure to include a budget in his case information statement requires a different result. To be sure, in high income earning cases, tax returns and a complete case information statement should be provided to allow the court to consider the lifestyle of the supporting parent. Isaacson, 348 N.J. Super. at 588. Here, plaintiff provided tax returns and a case information statement, but the case information statement did not include a budget. Although the trial court should have required that budget before a plenary hearing, we do not find plaintiff's failure to provide it requires reversal of the court's order. As explained by the trial court, there was lengthy and detailed testimony concerning plaintiff's lifestyle and his income, and plaintiff candidly acknowledged he could afford an increase in child support, even the $75,000 per month sought by defendant. Thus, neither "his ability to pay nor lifestyle was in significant dispute," id. at

589, and the lack of evidence concerning his precise budget was unnecessary to the court's determination of defendant's modification application,[3] id. at 588-89.

Defendant last claims the court erred by denying her application for attorney's fees. We review an order regarding attorney's fees in a matrimonial case to determine if the trial court abused its discretion. Harte v. Hand, 433 N.J. Super. 457, 465-66 (App. Div. 2013). We "will disturb a trial court's determination on counsel fees only on the 'rarest occasions, and then only because of a clear abuse of discretion.'" J.E.V. v. K.V., 426 N.J. Super. 475, 492 (App. Div. 2012) (quoting Rendine v. Pantzer, 141 N.J. 292, 317 (1995)).

Under N.J.S.A. 2A:34-23, a court may award counsel fees in a matrimonial matter and "shall consider the factors set forth in the court rule on counsel fees, the financial circumstances of the parties, and the good or bad faith of either party." Our Court Rules provide that a trial judge may, in his or her discretion, award counsel fees in a matrimonial action. R. 5:3-5(c). A judge should consider the following factors in "determining the amount of the fee award":

---

[3] We also observe that defendant failed to provide complete financial information to the court. More specifically, defendant did not provide information concerning the identity and value of her apparently considerable assets, which provided the basis for an annual unearned income generally exceeding $1 million.

(1) the financial circumstances of the parties; (2) the ability of the parties to pay their own fees or to contribute to the fees of the other party; (3) the reasonableness and good faith of the positions advanced by the parties both during and prior to trial; (4) the extent of the fees incurred by both parties; (5) any fees previously awarded; (6) the amount of fees previously paid to counsel by each party; (7) the results obtained; (8) the degree to which fees were incurred to enforce existing orders or to compel discovery; and (9) any other factor bearing on the fairness of an award.

[R. 5:3-5(c).]

Defendant's argument the court erred by denying her request for attorney's fees is without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). We add only that the court considered and made findings as to each of the factors, and its findings are supported by sufficient credible evidence. We reject defendant's claim she is entitled to attorney's fees because she sought the increase in child support on behalf of the parties' two children. As the court concluded, defendant's motion is bereft of any evidence the children's reasonable needs required the requested child support increase.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

23