**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3573-18T4

MAIREAD
SHANNON-BEVILAQUE,

      Plaintiff-Respondent,

v.

ANTHONY J. BEVILAQUE,

      Defendant-Appellant.

_____

          Argued telephonically May 20, 2020 –
          Decided June 16, 2020

          Before Judges Koblitz, Gooden Brown and Mawla.

          On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Union County, Docket No. FM-20-0843-17.

          Joseph M. Freda, III argued the cause for appellant (Gomperts Penza McDermott & Von Ellen, LLC, attorneys; Joseph M. Freda, III, of counsel; Marisa Lepore Hovanec, of counsel and on the briefs).

          Kathleen B. Estabrooks argued the cause for respondent.

PER CURIAM

Defendant Anthony Bevilaque appeals from a December 19, 2018 judgment of divorce, a February 27, 2019 amended judgment of divorce, and an April 12, 2019 order denying reconsideration of the amended judgment, which collectively adjudicated alimony, child support, counsel and expert fees, and life insurance and other issues. We affirm.

Defendant and plaintiff Mairead Shannon-Bevilaque were married for nearly twenty-four years. Three children were born of the marriage who were twenty-four, twenty-two, and eighteen, at the time this matter was tried over the course of four days in October 2019.

The facts adduced at trial showed plaintiff received her associate degree in nursing in 1993 and worked as a full-time nurse until the parties' first child was born. Thereafter, she held various per diem and part-time jobs and returned to work full-time in January 2018. She completed her bachelor's degree in 2003 and then a master's degree in 2012, both in nursing. Defendant is self-employed as the sole owner of a laundry systems business.

Pendente lite, a joint expert was retained to conduct a cash flow analysis and valuation of the laundry business. The expert engaged in multiple settlement conferences with the parties and provided them with draft reports

containing his opinions on cash flow and value, which diverged greatly from one conference to the next. The expert wrote to the court acknowledging the different valuations attributing it to each party's "significantly differing" representations. He requested forty-five days to complete a final report before trial began. Defendant retained his own expert to review the draft schedules the joint expert prepared and formulate a rebuttal report. After learning defendant had an expert, plaintiff retained her own as well. The court directed defendant to advance $10,000 to plaintiff from the parties' home equity line of credit (HELOC) for her expert.

Less than eight weeks before trial, the joint expert provided his final report, in which he opined defendant had an average annual pre-tax cash flow of $260,806 and valued the business at $620,000. The joint expert's testimony was consistent with his report. Plaintiff's expert opined the average pre-tax cash flow was $279,047 and valued the business at $685,000. Defendant's expert opined the average pre-tax cash flow was $222,189 and valued the business at $440,000.

Plaintiff testified about three Case Information Statements (CIS) she filed during the divorce proceedings. The first CIS, dated September 25, 2017, was filed more than nine months following the date of complaint, and claimed a joint

marital lifestyle of $12,222 per month; a second CIS, filed approximately eleven months later, claimed a joint marital lifestyle of $34,248 per month; and a third CIS, bearing the same date as the second and according to plaintiff filed to correct an error, certified to a joint lifestyle of $26,749 per month. Plaintiff testified the difference between her first and third CIS was because she did not have access to the information to accurately complete it because defendant handled the finances during the marriage.

Plaintiff's second and third CISs, set forth a current lifestyle for herself and the parties' youngest child, including an anticipated college contribution expense, of $14,070 per month. She explained her budget also included the proposed costs of purchasing a new home in the same area as the marital residence, with an anticipated mortgage expense between $2000-2500 per month. She testified her annual salary was $67,600.

Defendant testified regarding a CIS he filed contemporaneous with plaintiff's first CIS, which set forth a joint marital lifestyle of $9242 per month and a second CIS filed two years later which stated the marital lifestyle was $16,021 per month. He explained the second budget was vastly greater because when he completed the first CIS, he "wasn't aware of how to fill it out."

4

Plaintiff testified the parties' eldest child was employed but was moving back home until he was ready to find another place to live. She testified the middle child currently resided at home and occasionally worked for defendant, and the youngest child was in her first semester of college in Arizona but intended to return and was awaiting responses to her transfer requests from New Jersey schools.

During summations, defendant's counsel asked the court to order open durational alimony of $47,000 per year, based on yearly gross incomes of $222,189 for defendant and a forty-hour instead of thirty-four-hour work week for plaintiff, totaling $81,120. Defendant argued child support was a "red herring" and there were "no proofs as to expenses for the daughter that are not covered by . . . the college expenses or . . . substantial alimony that's going to be provided." Defendant requested the court order each party be responsible for his or her own counsel fees.

Plaintiff's counsel argued for open durational alimony of $70,000-75,000 per year, based on a gross yearly income of $279,000 for defendant and $67,448 for plaintiff. Plaintiff also sought child support for the daughter and defendant's contribution to her counsel and expert fees.

The trial judge issued a detailed written decision and entered a judgment of divorce, ordering defendant to pay plaintiff $70,000 per year of non-taxable open durational alimony for a period up to twenty-three years. The judge described the marriage as one of long duration and the marital standard of living as "the lifestyle of an upper middle class family. They did not live extravagantly, but traveled, had a nice home free of mortgage, ate out often, and carried no debt." The judge found the divorce would result in "each party [being] relatively equal going forward. All assets with the exception of the [d]efendant's company will be equally divided, and there is no debt to be divided."

The judge rejected defendant's argument that plaintiff could work more hours per week or in a more lucrative hospital setting. He concluded:

> Many of the factors in the alimony statute have already been extensively analyzed in the section of this opinion addressing equitable distribution. The portion of the statutory analysis which requires further discussion is the need of [p]laintiff and the ability of [d]efendant to pay.
>
> Prior to discussing the need and ability to pay, the court has considered and rejected the concept that the equitable distribution will provide income which could defray a portion of the need of [plaintiff]. It is true that the parties will be selling a home estimated in value of approximately $545,000 of which she will receive half the net proceeds. In addition, the court has made an

A-3573-18T4

award of $198,000 in equity from [the] business. However, [p]laintiff will have to obtain replacement housing, with her career for the next twenty years here in northern New Jersey, one of the most expensive real estate markets in the nation. Additionally, she will have her pro rata share of the cost of [the daughter]'s education for the next three and a half years. The remainder of the assets to be divided are largely retirement assets. Thus the court does not envision a pool of money which will generate any substantial income.

. . . .

Plaintiff has projected a monthly lifestyle budget of $14,000. The court, on the whole, does not take issue with the estimates. However, they are estimates for her and one child. Accordingly, they have to be adjusted by the court. The court reduces food from $800 to $600. Clothing will be reduced from $500 to $300. Hair care and nails reduced to $200. The private school costs of $1250 are eliminated. The debt services of $800 is also eliminated. This amounts to $2600 being backed out for a monthly lifestyle of $11,400. This would result in an after[-]tax need of $136,800, which would represent approximately $180,000 in taxable income.

. . . [Defendant]'s trial CIS indicated monthly family expenses of $16,021, for a total per annum family need of $192,252. . . .

In this matter the court has concluded that the [p]laintiff earns $67,000 and the [d]efendant $278,000. Assuming they were to live similar lifestyles after the marriage, that would assumedly require total income in excess of their actual income.

The court concluded that [p]laintiff should be awarded $70,000 per year in non-taxable alimony. It shall be neither a write off for him or taxable to her. This recognizes that much of the marital lifestyle was funded through the business and was therefore not taxable to them. Added to the $67,000 in taxable earnings she makes, this will provide [p]laintiff with income of $137,000, of which only her salary is taxable. The court believes this will afford her with the ability to preserve the marital lifestyle, as closely as possible.

The judgment compelled defendant to pay $243 per week in child support for the youngest child, commencing upon the sale of the former marital home. The judge calculated child support pursuant to N.J.S.A. 2A:34-23(a) because the parties' incomes exceeded the maximum under the Child Support Guidelines. The judge explained

[w]hen the parties tried this case . . . [their daughter] was out west at [a] [u]niversity [in] Arizona, but had determined it was not a good fit for her and was transferring home. The court does not know whether [their daughter] will be living at home, when the former marital home will be sold, and has only the estimate as to what [plaintiff]'s future living arrangements will involve.

The court has run the base child support number. That produces a base amount of $347 per week. This court is not disposed to add an amount despite the fact that the total income for both of the parties is substantially above the guidelines. This is because the parties, and their children, have not enjoyed such a profligate lifestyle that there is an additional need for support. There are no special hobbies, activities, or

A-3573-18T4

expenses. There is simply nothing about the past needs of the child that creates a need for an enhanced amount of support.

However, pursuant to Jacoby[1], the court does believe that there should be a downward modification. The court is mindful that in excess of [sixty percent] of child support represents fixed expenses. In addition, when [the daughter] is home, the [p]laintiff will have some additional expenses. Based on the foregoing, the court believes a [thirty percent] downward modification of the base amount is appropriate, and child support is thus set at $243 per week.

After entry of the judgment of divorce, plaintiff's counsel moved for attorney's and expert fees and filed an affidavit of services in support of the request. Plaintiff also requested that the court require defendant to maintain life insurance for her and the youngest child's benefit. The trial judge entered the amended judgment granting the request for fees and ordered defendant to maintain $2,000,000 in life insurance to secure his alimony obligation.

The judge issued written findings addressing the Rule 5:3-5(c) factors. He stated

[p]laintiff paid a prior attorney nearly $10,000 and [her current attorney] has amassed fees of $44,980, of which she has only been paid $5000. Those legal fees [are] decidedly low as compared to similarly situated attorneys practicing in this area doing family law. In addition, as detailed in the court's earlier letter opinion

---

[1] Jacoby v. Jacoby, 27 N.J. Super. 109 (App. Div. 2012).

this matter involved a corporate valuation issue wherein the parties worked throughout the litigation with a joint expert. However, at the [eleventh] hour [d]efendant hired a rebuttal expert to the joint expert, which [p]laintiff determined created the need in her mind at least . . . to hire a third expert to counter the rebuttal expert. She continues to owe [her expert] the sum of $19,694.50, after an initial retainer was paid via a draw on the HELOC of the former marital home.

The court has not been provided with any information as to [d]efendant's legal fees, although same were apparently paid through [his] business, similar to the manner in which much of the marital lifestyle was funded. Needless to say, this is a luxury not afforded [p]laintiff. Plaintiff argues this inequity should be considered in this court's decision.

. . . The court takes [the parties' income and plaintiff's award of alimony and equitable distribution] into consideration as to the ability of the parties to pay their own attorneys' fees as well as whether some or all of [p]laintiff's fees should be visited on [d]efendant.

The remaining factors in this matter for the court to consider are the reasonableness of the positions of the parties, as well as the results obtained. It should be noted that the matter was tried basically because of the failure to agree on two substantial issues, namely the length and amount of alimony, as well as the share of equitable distribution [p]laintiff would derive from the business entity. In virtually all other matters, the parties were able to forge an agreement.

. . . As indicated in this court's earlier letter opinion, both of [defendant's positions on alimony and imputed income] were soundly rejected by the court.

. . . Plaintiff was willing to resolve the matter pre-trial for a taxable alimony of $75,000. This demand was based on salary figures strikingly similar to that found by the court. Thus, [after taxes, p]laintiff's demand was significantly lower than what the court actually awarded.

. . . The court awarded $198,000 [in equitable distribution] based on a [business] valuation of $660,000. It should be noted that the joint expert's opinion as to value was $620,000.

As can be seen from the foregoing, it was the position of [d]efendant that drove this matter for trial. Plaintiff's settlement positions, in light of the court's decision, were reasonable. Defendant's clearly were not.

Based upon all of the foregoing, the court finds no reason to visit upon [d]efendant the legal fees incurred throughout the course of the litigation leading up until trial. This matter was not litigated in an overly litigious [way]. Quite the opposite. However, [d]efendant is solely responsible for driving this matter to trial. He achieved less than what he could have settled for, and in doing so he forced [p]laintiff to incur trial costs including attorneys' fees and expert costs. The court finds that he should be 100% responsible for these costs.

The court has done a line by line review of [plaintiff's counsel]'s billing statements and determines that she dedicated 70.2 hours representing $28,080 in fees towards the trial, and as represented [plaintiff's expert]'s fees amount to $29,694. This will represent the award to [p]laintiff.

Defendant moved for reconsideration of the fee award and requested the life insurance obligation be decreased to one million dollars. On April 12, 2019, the trial judge denied reconsideration reiterating his reasons for the award of fees to plaintiff. The judge made further findings regarding the life insurance as follows:

> I'm also not satisfied that the insurance should be reduced. [Defendant] has other obligations to [plaintiff]. There's the obligation of the daughter's college, which hasn't been resolved yet, although he has been paying it. If . . . something happened to him, there needs to be guarantees in place. And so I find that, at this point, the two million [dollar] life insurance is appropriate. Certainly, there will come a time when the [c]ourt could modify that amount if asked to do so, or by agreement of the parties.

## I.

Our scope of review of Family Part orders is limited. Cesare v. Cesare, 154 N.J. 394, 411 (1998). We "'should not disturb the factual findings and legal conclusions of the trial judge unless . . . convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice' or when we determine the court has palpably abused its discretion." Parish v. Parish, 412 N.J. Super. 39, 47 (App. Div. 2010) (alteration in original) (quoting Cesare, 154 N.J. at 412).

We also review the denial of reconsideration for an abuse of discretion. Cummings v. Bahr, 295 N.J. Super. 374, 389 (App. Div. 1996).

A.

Defendant argues the alimony award was excessive and more than plaintiff sought because she would have to receive $86,800 per year in taxable alimony to net $70,000, which he asserts "amount[s] to $12,000-17,000 per year more in alimony than requested." He contends the trial judge failed to consider each party's right to share in the marital lifestyle.

Family Part judges possess broad authority in calculating an alimony award.

> The prevailing principle in fixing an alimony award [is that]: "the goal of a proper alimony award is to assist the supported spouse in achieving a lifestyle that is reasonably comparable to the one enjoyed while living with the supporting spouse during the marriage." Crews v. Crews, 164 N.J. 11, 16 (2000); Innes v. Innes, 117 N.J. 496, 503 (1990) (citing Mahoney v. Mahoney, 91 N.J. 488, 501-02 (1982)). "The supporting spouse's obligation is set at a level that will maintain that standard." Innes, 117 N.J. at 503 (citing Lepis v. Lepis, 83 N.J. 139, 150 (1980)).
>
> [Cox v. Cox, 335 N.J. Super. 465, 472-73 (App. Div. 2000).]

As we recently stated: "The importance of . . . the marital lifestyle cannot be overstated." S.W. v. G.M., __ N.J. Super. __, __ (App. Div. 2020) (slip op.

13

at 11). The Legislature underscored this principle when it amended the alimony statute to require the court to consider "[t]he standard of living established in the marriage . . . and the likelihood that each party can maintain a reasonably comparable standard of living, with neither party having a greater entitlement to that standard of living than the other."  N.J.S.A. 2A:34-23(b)(4).  In enacting N.J.S.A. 2A:34-23(b)(4), the Legislature did not intend an income equalization. S.W., __ N.J. Super. at __ (slip op. at 14).

Defendant's arguments relating to the alimony award lack support in law or the facts adduced at trial.  The trial judge accepted plaintiff's representation of the marital standard of living, which was that the parties' expended $26,749 per month or $320,988 per year net.  Therefore, the award of $70,000 per year, when added to plaintiff's taxable income, resulted in $137,000 per year, a sum which was still subject to taxation in part and was not excessive considering it fell far below the marital standard of living.  Moreover, the alimony did not meet plaintiff's needs, which the judge calculated to be $11,400 per month or $136,800 net per year.  The alimony award even fell far below the marital standard of living according to defendant.

Defendant argues because trial concluded before the December 31, 2018 deadline established by the Tax Cuts and Jobs Act of 2017, which eliminated

the tax deductibility of alimony, it was erroneous for the judge to award non-taxable alimony without providing a rationale or considering the tax consequence of the award to defendant.  We disagree.

The trial judge had discretion to consider whether alimony would be taxable.  N.J.S.A. 2A:34-23(b)(12).  The judge expressed a rationale for awarding non-taxable alimony, namely, that "much of the [parties'] marital lifestyle was funded through the business and was therefore not taxable to them." The judge further noted awarding non-taxable alimony would "afford [plaintiff] with the ability to preserve the marital lifestyle, as closely as possible."

We also reject defendant's arguments the trial judge made "no findings whatsoever" as to defendant's ability to maintain a standard of living comparable to the marriage, and that the alimony award gave plaintiff more disposable income than defendant.  Defendant retained the business, which according to the judge, was the "main source of income that has allowed this family to live a comfortable lifestyle."  Plaintiff had no income producing assets, was dependent on defendant, and bore the majority of the youngest child's expenses who would be living with her.  The judge found plaintiff's equitable distribution would be used to purchase a new home.  These circumstances justified the alimony award. The judge did not abuse his discretion.

B.

Defendant argues the judge erred by using the guidelines, as opposed to the factors enumerated in N.J.S.A. 2A:34-23(a), to calculate child support for the parties' daughter, who was residing away at college. He asserts the guidelines worksheet was erroneous because it allotted no overnights to defendant and no credit for alimony.

"The trial court has substantial discretion in making a child support award. If consistent with the law, such an award will not be disturbed unless it is manifestly unreasonable, arbitrary, or clearly contrary to reason or to other evidence, or the result of whim or caprice." Foust v. Glaser, 340 N.J. Super. 312, 315-16 (App. Div. 2001) (citations and quotations omitted).

Contrary to defendant's claims, the trial judge analyzed each N.J.S.A. 2A:34-23(a) factor in detail, acknowledged the parties' income exceeded the maximum amount in the guidelines, but found no basis to award support in excess of the guidelines based on the parties' lifestyle and plaintiff's needs. Rather, reasoning that a reduction of one-half of plaintiff's fixed expenses was appropriate because plaintiff testified the daughter would live on-campus after transferring to a New Jersey school, the judge awarded a sum less than the guidelines amount.

The judge did not err by not including overnights in the child support calculations because defendant offered no testimony to that effect and did not contradict plaintiff's testimony that the daughter intended to live on-campus in New Jersey. Furthermore, the judge explained the non-taxable alimony was added to plaintiff's income in the child support calculation. Defendant's argument that the judge did not deduct alimony from his income on the guidelines worksheet thereby improperly skewing each party's share of the total family income on the worksheet is unpersuasive because the judge did not apply the guidelines and did not order the parties to split any obligation in proportion to their incomes. The only aspect of the judgment which read to that effect was a paragraph memorializing the parties' consent to share in the youngest child's college expenses from the date of the judgment. This provision was not adjudicated by the trial judge.

The child support award was supported by the adequate, substantial, and credible evidence in the record. Considering the judge reduced plaintiff's budget by $2670 per month, or $620 per week, to account for expenses he found were associated with the daughter alone, the award of $243 per week was not an abuse of discretion.

17

## C.

Defendant argues he should not have been ordered to pay counsel and expert fees because he did not act in bad faith, and the equitable distribution and support awards put the parties in financial parity. He asserts plaintiff's certification of services did not show the expert fees were reasonable, did not account for the $10,000 already paid to plaintiff from the HELOC, and awarded plaintiff $5000 more than the advance she received to pay her expert.

Generally, "the party requesting the fee award must be in financial need and the party paying the fees must have the financial ability to pay, and if those two factors have been established, the party requesting the fees must have acted in good faith in the litigation." J.E.V., 426 N.J. Super. at 493 (citing Guglielmo v. Guglielmo, 253 N.J. Super. 531, 545 (App. Div. 1992)). "'The application of these factors and the ultimate decision to award counsel fees rests within the sound discretion of the trial judge.'" Gotlib v. Gotlib, 399 N.J. Super. 295, 314-15 (App. Div. 2008) (quoting Loro v. Colliano, 354 N.J. Super. 212, 227 (App. Div. 2002)). "We will disturb a trial court's determination on counsel fees only on the 'rarest occasion,' and then only because of clear abuse of discretion." Strahan v. Strahan, 402 N.J. Super. 298, 317 (App. Div. 2008) (quoting Rendine v. Pantzer, 141 N.J. 292, 317 (1995)). N.J.S.A. 2A:34-23 states: "The court may

order one party to pay a retainer on behalf of the other for expert and legal services when the respective financial circumstances of the parties make the award reasonable and just."

Contrary to defendant's argument, the trial judge considered the parties' incomes, plaintiff's non-taxable alimony, and the equitable distribution award in determining their respective ability to pay their own attorneys' fees and whether defendant should contribute to plaintiff's fees. The judge noted defendant's business paid his fees and plaintiff did not have the ability to pass the expense through the business in a similar fashion. He further reasoned that plaintiff hired her rebuttal expert because defendant hired his rebuttal expert "at the [eleventh] hour," plaintiff's "settlement positions, in light of the court's decision, were reasonable," and defendant was "solely responsible for driving this matter to trial." These findings supported the judge's conclusion that plaintiff was reasonable and acted in good faith when she incurred her expert fees.

Moreover, defendant ignores the judge's limitation of the fee award to expenses related to trial, crediting the parties for being able to "forge an agreement" as to "virtually all other matters" other than the issues left for trial. The judge thoroughly analyzed plaintiff's counsel's fee certification, noting her billable rate was "decidedly low as compared to similarly situated attorneys

19

practicing in this area doing family law." We are unconvinced the counsel fee award constituted an abuse of discretion.

We find no error in the trial judge's expert fee award. The amended judgment did not state the HELOC would be paid from the net sale proceeds from the marital residence and borne equally by the parties. Rather, plaintiff remained responsible for the $10,000 advance from the HELOC. In recognition of this fact, and the fact that defendant out-earned plaintiff and retained the income-producing asset, and the results plaintiff achieved, the judge's decision to reimburse plaintiff the $10,000 advanced to her was neither an overpayment of fees nor an abuse of discretion.

D.

Defendant argues the trial judge erred in compelling him to maintain a two-million-dollar life insurance policy for plaintiff's benefit because the death benefit exceeds his total alimony obligation of $1,610,000, creating a windfall. He asserts the award is inconsistent with S.W., in that the death benefit did not reduce over time. He argues "[e]ven assuming a discount rate of only [two and a half] percent, the present value of $1,610,000 over twenty-three years is only $912,000." He states if the life insurance was to secure his obligation of support

for their daughter's college, the judge should also have designated her a beneficiary.

The authority of the court to order life insurance to secure alimony and a child's college expenses derives from N.J.S.A. 2A:34-23. Moreover,

> [w]here a party is insurable and able to pay the necessary premiums, a life insurance death benefit should neither only meet a beneficiary's bare needs, nor be a windfall. In the former case, unexpected changes in circumstances can leave a beneficiary with unmet needs, whereas the latter condition exposes a payor's estate to obligations he or she never had during the marriage.
>
> [S.W., __ N.J. Super. at __ (slip op. at 15).]

In the amended judgment, the trial judge reasoned a two-million-dollar life insurance policy would secure the alimony. On reconsideration, he elaborated that the insurance would also secure the college obligation and could be modified as defendant met his obligations.

The trial judge gave ample reasons for the life insurance determination. The judge's finding is consistent with S.W., wherein we held that reductions in the death benefit amount may be appropriate as a payor meets his support obligations and are a "matter of judicial discretion." __ N.J. Super. at __ (slip op. at 16-17). The judge explicitly acknowledged that defendant was not precluded from seeking a modification of the life insurance if circumstances

21

change as a result of having satisfied his obligations. The parties' daughter was unemancipated and plaintiff could administer the life insurance proceeds on her behalf in the event of defendant's demise to meet her college expenses without naming the daughter as a beneficiary. The life insurance award was not an abuse of discretion.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION