658 A.2d 736

DARLENE NARVAE, (FORMERLY KNOWN AS DARLENE FREESTONE), PLAINTIFF, v. MATTHEW FREESTONE, DEFENDANT.

Superior Court of New Jersey
Chancery Division Family Part
Sussex County

Decided January 26, 1995.

*Darlene Narvae,* pro se.

*Matthew Freestone,* pro se.

## OPINION

CONFORTI, J.S.C.

In this post-judgment divorce motion, defendant, Matthew Freestone, appearing *pro se,* seeks to modify his child support obligation based upon changed circumstances and the non-traditional custody-visitation arrangement between the parties. Plaintiff, Darlene Narvae (formerly Darlene Freestone) appearing *pro se,* filed answering papers opposing defendant's motion and also a cross-motion seeking an increase in child support from defendant. The court grants defendant's motion and denies plaintiff's cross-motion. In calculating defendant's modified support obligation, the court has applied the rationale of *Pascale v. Pascale,* 274 *N.J.Super.* 429, 440–45, 644 *A.*2d 638 (App.Div.1994). To date there are no reported decisions addressing this calculation.

The court finds the following facts. Plaintiff and defendant were married on February 19, 1977, and two children were subsequently born of this marriage: L.F.—born April 20, 1983 and D.F.—born September 5, 1984.

The parties are the subject of a Judgment of Divorce filed September 2, 1992, which included the following determination concerning custody and vacations:

The parties shall have the joint, legal custody of the parties' minor children. The parties shall share the custodial time each is entitled to as follows:

a. The Defendant shall have the children in alternate weeks commencing Wednesday immediately after school (approximately 3:00 or 3:30 PM) through Monday at 8:00 AM. The Defendant shall drop the children off directly at school. The Defendant shall also have the children the following week from Friday after school (approximately 3:00 PM) until Saturday at 10:00 AM.

b. In the event any Monday is a holiday and the Plaintiff does not work, then the children shall be returned at 8:00 AM to the Plaintiff. In the event the Plaintiff has to work on a holiday and the Defendant does not work, then the Defendant may keep the children until 5:00 PM Monday evening. In the further event that both parties do not work on that Monday, then the parties shall alternate that Monday holiday. (If either party picks up or drops off the children more than 30 minutes late [except in case of an emergency], he or she shall lose double that amount of time during the next custodial visitation.

*SUMMER VACATIONS:* The parties shall be entitled to have the children in their physical custody three, uninterrupted weeks each summer. Said period may be continuous or broken up into 3 one week periods or two weeks and one week. Each party shall notify the other party by May 1st as to which three weeks they will desire to spend with the children. The Defendant, however, shall be entitled each year to have the children for two weeks (being 2 of his 3 weeks) during the time that his employer closes the company. The remaining $4 \pm$ weeks the children are out of school each summer, the Plaintiff shall have the children in alternate weeks commencing on Wednesday at 3:30 PM through Monday at 8:00 AM and the following week on Friday at 3:30 PM until Saturday at 10:00 AM. The Plaintiff, however, shall be entitled to have the children in her company the first two weeks (being 2 of her 3 weeks) following the close of school each summer (June of each year).

*SCHOOL VACATIONS OTHER THAN SUMMER VACATIONS:* The parties shall alternate all school vacations during the year, such as Christmas break, winter and spring breaks (except summer).

This custody-visitation arrangement remains in place and there has not been any substantial variation of this arrangement.

In a letter opinion of March 30, 1992, deciding outstanding issues between the parties, the divorce trial judge found with respect to child support:

There is an issue with respect to the applicability of the child support guidelines in this case. First, there is the issue whether the guidelines apply at all because the custody arrangement that has been worked out between the parties provides for a nearly equal custody-sharing arrangement. Defendant argues that the child support guidelines should not apply to a situation such as this, the guidelines being applicable only in the more usual custody arrangement where the custodial parent has the children for most of the time, and the non-custodial parent has limited visitation. There is an additional issue with respect to the fact that the parties combined net income exceeds the guideline's figure. However, this court believes that in a case such as this where the excess over the guidelines figure is relatively small, that it is appropriate to extrapolate the guideline's figures. This court is satisfied that the guidelines do apply to this situation. The guidelines apply because it is necessary for the custodial parent to have housing available, have utilities in place, provide most of the clothing, school needs and the like. In fact, the only tangible benefit that a relatively equally shared custody arrangement will provide to the custodial parent is a reduced expense for food for the children, and perhaps some incidental expenses for entertainment and the like. In this case, there is ample reason to simply apply the guidelines based upon the net weekly income of the parties. This will tend to balance out two factors which probably should be considered by the court; the first being that the defendant has earned a bonus every year for the last 5 or 6 years, and can probably rely upon the bonus as part of his pay.[1] The bonus may be offset against the reduced expense to the plaintiff by reason of the relatively equally shared custodial arrangement here. The evidence supports the conclusion that the defendant's net is $806.00 and the plaintiff's net is $335.00, a total of $1,141.00. The child support guidelines suggest by extrapolation a guideline's figure of between $314.00 to $346.00 as the total support obligation. Defendant's obligation would be 71%, leaving a total obligation of $234.00 for child support.

At the time the divorce was granted, defendant was receiving a weekly net income of $806.00. Defendant's employer was providing medical and dental insurance coverage without contribution, according to defendant's certification.

■ In November 1992, defendant remarried. On June 4, 1993, a child, J.F., was born to defendant and his wife, Dinnea. Defendant's wife has three children by a prior marriage. Although defendant is not legally obligated to provide for their support,

---

[1] However, the court must also note that in this economic climate it is unwise to count too heavily on the continued availability of bonuses.

defendant does aver that he contributes by reason of this new family unit. Defendant's present financial circumstances indicate a weekly available income of $779.32. Defendant's employment terms have changed; defendant now must contribute $37.73 per week for medical and dental insurance coverage. Defendant has less weekly available income with more financial obligations since the entry of the divorce judgment. The court is satisfied, therefore, that defendant has shown a substantial change in circumstances. *Lepis v. Lepis,* 83 *N.J.* 139, 416 *A.*2d 45 (1980).

The court finds that the parties custody/visitation arrangement is not traditional. Two weeks of every month, defendant has custody of his two children 48% of the total available time and for the other two weeks 30% of the total available time. Variations of these percentages exist for vacations and holidays. For example, during four weeks of summer recess, defendant has custody a greater percentage of the time. Taken together, the court finds that on average, defendant enjoys a full time custody with the two children 39% of the total time he may be with his children. This arrangement clearly provides defendant with substantially more time with his children than every other weekend or one or two days during every week, as more conventional visitation schedules provide.

■ These facts present the court with this challenging issue. With a diminished net weekly income and an increased total child support obligation since the entry of the divorce judgment, how should the court calculate defendant's child support obligation in a non-traditional custody/visitation arrangement. "The utilization of a non-traditional custody/visitation arrangement does not allow the court to disregard the child support guidelines." *Pascale, supra,* 274 *N.J.Super.* at 443, 644 *A.*2d 638. Additionally, the court must consider the statutory elements of *N.J.S.A.* 2A:34–23a. Finally, as a court of equity, principles of fairness must be applied to arrive at a just and equitable calculation. Within the boundaries of these parameters, the court utilizes the following rationale.

■ Pursuant to the Child Support Guidelines, Appendix IX–E, Section C(5)(a)–(e), when a party has a child of another relationship, and child support for that other child is not court ordered, the court is required to calculate a support award for that party by averaging his obligation with and without his obligation to the other child. Therefore, the first step is to calculate defendant's obligation to his new daughter, J.F., by using the guidelines worksheet. Second, defendant's obligation to his children with plaintiff is calculated, first using his support to J.F. and then, not using his support to J.F. An average of these two calculations is taken to arrive at his support obligation. After having evaluated the income of the parties, the court calculates that obligation as $211.19 for defendant and $115.81 for plaintiff.

■ If this were a traditional custody arrangement, the analysis would be finished. However, because the court is satisfied that the custody arrangement is not traditional in nature, defendant should be given a proportionate credit for the amount of time that he has physical custody of his children. *N.J.S.A.* 2A:34–23a(4) requires the court to take into account, among many factors, the "custodial responsibility for children including the cost of providing child care." Obviously, child care costs can include a parent's daily living expense for a child residing with that parent. *Pascale, supra,* 274 *N.J.Super.* at 444–45, 644 *A.*2d 638. For these reasons, the court makes an adjustment to the guideline figure.

Granting defendant a proportionate credit allows the defendant access to more of the total basic support for those weeks when he has a greater percentage of physical custody of the children. The court calculates this proportionate credit with this verbal equation. The court has found defendant has custody of the children an average of 39% of the total available time throughout the calendar year. The difference between the parties' respective support obligations is $95.38 on a weekly basis, 39% of that difference is $37.20. This $37.20 is deducted from defendant's obligation to enable defendant to receive his proportionate credit.

Next, the court must consider the impact of defendant's annual bonuses on his support obligation. Defendant's bonus for 1994 was $4,800.00. The court adds $10.00 to defendant's weekly support obligation. Equitably, his children are entitled to share in this lump sum income. See *Dunne v. Dunne,* 209 *N.J.Super.* 559, 508 *A.*2d 273 (App.Div.1986); *Zazzo v. Zazzo,* 245 *N.J.Super.* 124, 584 *A.*2d 281 (App.Div.1990); *Walton v. Visgil,* 248 *N.J.Super.* 642, 591 *A.*2d 1018 (App.Div.1991). *N.J.S.A.* 2A:34–24a(3) provides children are entitled to participate in *all* income of a parent in determining support. (Emphasis added.)

Therefore, defendant's modified child support obligation is $183.99 (rounded off to $184.00 per week) or 61% while plaintiff's support obligation remains $115.81 or 39%.

For the foregoing reasons, the court is satisfied, as well, that plaintiff has failed to meet her burden to demonstrate a substantial change in circumstances to justify an increase in defendant's support obligation. *Lepis, supra,* 83 *N.J.* 139, 416 *A.*2d 45.