**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3507-23

ARON BETRU,

    Plaintiff-Respondent/
    Cross-Appellant,

v.

TIKIKIL FIRDU,

    Defendant-Appellant/
    Cross-Respondent.

_____

        Argued May 21, 2026 – Decided June 8, 2026

        Before Judges Mawla, Marczyk and Puglisi.

        On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Mercer County, Docket No. FM-11-0888-16.

        Barbara Ulrichsen argued the cause for appellant/cross-respondent (SeidenFreed LLC, attorneys; Barbara Ulrichsen and Derek M. Freed, on the briefs).

        Amy Sara Cores argued the cause for respondent/cross-appellant (Madjam Music & Entertainment Law, LLC, attorneys; Amy Sara Cores, on the briefs).

PER CURIAM

Defendant Tikikil Firdu appeals from an August 19, 2020 order, which sua sponte expanded a parenting coordinator's authority to calculate child support, and a May 29, 2024 order adopting the parenting coordinator's recommendations regarding child support.  Plaintiff Aron Betru cross-appeals from the portions of both orders denying his requests for counsel fees and costs.  We reverse and remand for the reasons expressed in this opinion.

The parties were married for six-and-a-half years.  Two children were born of the marriage—both of whom are unemancipated.  In 2009, the divorce proceedings began in Pennsylvania.  In March 2010, the parties entered a custody and parenting time agreement, which designated defendant the parent of primary residence.  Plaintiff has not had more than 102 overnights per year, other than during the COVID-19 pandemic.

With plaintiff's consent, defendant and the children moved to New Jersey around June 2010.  On October 14, 2010, the parties entered an agreement setting plaintiff's child support obligation at $1,900 per month.  Due to the parties' incomes, this has always been an above-the-guidelines case.  The parties were divorced on November 21, 2011.  On November 25, 2015, the parties stipulated to transfer venue to New Jersey.

2

In 2016, plaintiff filed a complaint to reduce child support pursuant to the Uniform Interstate Family Support Act, N.J.S.A. 2A:4-30.124 to -30.201, and sought custody and removal of the children to Maryland, where he resided. Defendant opposed the application and responded with a request, among other relief, to increase child support retroactive to June 27, 2016, the date of her New Jersey counterclaim.

On December 2, 2016, the first motion judge entered an order denying the modification of custody and removal. The order reflected the parties agreed to mediate the remaining issues with a court-appointed mediator. Mediation proved unsuccessful and the motion practice resumed.

On September 30, 2018, the judge entered an order reserving a decision on child support pending a plenary hearing. The plenary hearing was rescheduled and heard by a second motion judge, who would later enter the August 2020 order. On December 4, 2019, pending the plenary hearing, the judge entered an order memorializing the parties' agreement that the effective date for the calculation of child support arrears would be November 1, 2018. From the effective date to the December 4, 2019 order, the arrears were $20,716. The order established a schedule for plaintiff to pay off the arrears. It further

directed probation not to enforce arrears. Instead, plaintiff would continue paying child support directly to defendant.

There were difficulties with respect to probation's handling of the account. As a result, on February 10, 2020, the judge entered a temporary order closing the probation account and directing plaintiff to pay the arrears through his attorney beginning March 1, 2020.

In March 2020, the COVID-19 pandemic began, forcing the children's schooling to become remote. The parties filed competing applications to address parenting time. Plaintiff sought equal parenting time, a suspension of his child support obligations from April to July 2020, and the appointment of a parenting coordinator. On April 6, 2020, the second motion judge entered an order establishing an equal parenting time arrangement and directing the parties to propose potential parenting coordinators "to resolve future parenting time issues."

On May 7, 2020, the judge entered an order adjudicating the child support issue presented at the plenary hearing. He modified plaintiff's child support obligation to $1,964 per month, effective June 27, 2016. This added $3,072 to plaintiff's child support arrears.

4

Notably, the judge found defendant remained the custodial parent and had 283 overnights per year. Because the parties' incomes exceeded the guidelines, the judge calculated child support using the guidelines and then supplemented the guidelines amount based on the evidence of the children's needs presented at the plenary hearing. Pursuant to Rule 5:7-4(d), the judge ordered child support would continue to be paid directly and not through probation, because "[t]here were errors in the calculation and enforcement of arrears that unduly burdened plaintiff, with wage garnishment and credit reporting occurring, despite" an order directing probation not to enforce.

Plaintiff disputed the judge's findings. The judge directed the parties to file supplemental briefs. On June 17, 2020, the judge entered an amended order vacating the $1,964 per month child support figure in the May 2020 order and instead ordered child support payable as follows: $1,066 per month for June 27 to December 31, 2016; $2,060 per month for January 1 to December 31, 2017; and $1,900 per month effective January 1, 2018. The judge revised the arrears calculation to $3,412 and directed plaintiff to continue making the arrears payment directly through his attorney.

The judge then entered a separate order appointing a parenting coordinator. The order stated the parenting coordinator's role was "to assist the

parties to resolve issues related to the care and custody of the children . . . . The [p]arenting [c]oordinator shall not have the authority to change existing [o]rders of the [c]ourt unless the parties consent and enter into a [c]onsent [o]rder." The order authorized the parenting coordinator to "make recommendations to the parties with regard to the issues relating to the care and custody of the children." An amended order was entered June 19, 2020, to address a clerical error and clarify an aspect of the judge's finding, which is irrelevant here.

On July 7, 2020, plaintiff appealed and defendant cross-appealed from various parts of the June 19, 2020 order. Notably, neither party appealed from the child support or arrears determinations. On September 17, 2020, the appeal was resolved via the Civil Appeals Settlement Program, and the issues raised in the appeal and cross-appeal were remanded for further findings by the motion judge.

On July 8, 2020, defendant moved for reconsideration of the June 2020 order. She argued plaintiff's child support arrears were $26,298 and requested child support be paid through probation because plaintiff was failing to make regular payments through his attorney.

Plaintiff opposed the motion and cross-moved for counsel fees and costs. He asserted defendant's reconsideration motion was out of time under Rule 4:49-

6

2 and the June 19, 2020 order was final. The judge rejected the argument and stated he would adjudicate the reconsideration motion on the merits. Plaintiff's counsel then argued if there was a question regarding the arrears calculations the judge could refer the issue to the parenting coordinator. However, there were no grounds to grant reconsideration. This began a discussion by the judge with both counsel about whether the parenting coordinator should resolve the arrears calculation. Plaintiff's counsel suggested the judge could sua sponte refer the matter to the parenting coordinator. Defendant's attorney replied she had "some concerns" about blending the parenting coordinator's role with the financial dispute.

The judge denied the motion for reconsideration, finding he did not overlook any facts or law when he calculated the arrears and ordered the direct payment of child support. He also denied plaintiff's request for counsel fees because defendant's motion for reconsideration was neither frivolous nor made in bad faith. The judge then advised counsel he would be contacting the parenting coordinator to see whether he could address the arrears dispute. Plaintiff's counsel told the judge if the parenting coordinator was going to address defendant's request for additional arrears, he should also address plaintiff's request to modify child support during the pandemic period.

A-3507-23

On August 19, 2020, the judge entered an order memorializing his rulings. The order reflected the judge had sua sponte amended the June 19 order "to expand the scope of the appointment of the [parenting coordinator] . . . to include the issue of the calculation of plaintiff's child support obligation and arrearages (taking into account any modifications that may be necessitated by changes to the parties' parenting time during the COVID-19 pandemic)."

On August 28, 2020, the parenting coordinator emailed the judge, copying counsel, for clarification of his new duties because the parties had different interpretations of the August 19 order. The parenting coordinator explained one party wanted to retroactively modify child support, while the other wanted him to address the issue prospectively. He noted the order referenced "support obligations and arrearages," which he interpreted as authorizing him "to review arrearages as well [as] the current obligations." The parenting coordinator asked the judge how far back he wanted him to review the child support.

The record does not contain a copy of the judge's reply. However, on December 29, 2020, the parenting coordinator emailed the parties advising the judge directed him to calculate child support "at least back to September 1[,] 2020."

On January 17, 2021, the parenting coordinator issued his recommendations. He averaged the parties' incomes for 2016 through 2019, but omitted plaintiff's 2019 capital gains of $327,951 because "[t]his was not and is not an ongoing source of income and is not being considered in the monthly calculation of [the] child support obligation." The parenting coordinator concluded defendant had a greater income than plaintiff each year in question, and the income differential for 2016 through 2019 was $61,030, $27,902, $88,240, and $37,065, respectively. He averaged the differentials for 2016, 2017, and 2019, excluding the 2018 figure because it was an atypical year for defendant. The parenting coordinator concluded defendant earned $41,999 more than plaintiff per year, which represented a "substantial" disparity that would have an "impact on the joint obligations with equal parenting time."

Based on plaintiff's representations, the parenting coordinator found plaintiff had paid $4,600 per month in child support from August 1, 2020 to January 31, 2021. This resulted in plaintiff owing no child support, and pursuant to the income differential calculated, created a child support credit.

Although the parenting coordinator found the yearly income differential was $41,999, his recommendation used a differential of $41,000 without explaining the difference. He used a child support calculator and input zero

dollars for plaintiff's and $41,000 for defendant's income. This yielded a child support figure of $107 per week, or $460 per month, defendant owed plaintiff, effective February 1, 2021. This resulted in a $2,300 total credit to plaintiff for September to December 2020, and January 2021.

The parenting coordinator issued additional recommendations on August 20, and 26, 2021. As it pertained to child support, the August 20 recommendation explained the child support had not been increased by 14.6% because neither child was over twelve years of age as of 2016. The parenting coordinator also noted he would presume plaintiff had at least 104 overnights in the child support calculation, and he would only use a shared parenting worksheet. He declined to include the cost of the children's medical insurance because each parent provided it, and he did not include the costs of extracurricular activities because the court had not ordered it. The parenting coordinator did not recommend child support beyond the guidelines amount.

The parenting coordinator provided a series of child support guidelines. Without explanation, he calculated child support back to January 2016 rather than July 2016, and input 125 days of overnights each year for plaintiff. Pursuant to the shared parenting worksheets, the child support was as follows: $77 per week for January 2016 to December 2017; $83 per week for January to

December 2018; $126 per week for January to December 2019; and $87 per week for January to December 2020. The parenting coordinator did not make a recommendation for child support in 2021 but stated the 2020 child support figure would serve as the starting point to calculate child support.

The August 26 recommendation partially addressed the outstanding issues of extracurricular activities and afterschool care. The parenting coordinator concluded the parties should bear the costs of extracurricular activities in proportion to their incomes, which he found was: defendant 59%; and plaintiff 41%.

On July 26, 2022, plaintiff moved to enforce the parenting coordinator's January 17, 2021 recommendation crediting him with a child support overpayment of $54,292 as of July 22, 2022. On October 20, 2022, defendant filed opposition and cross moved to enforce the May 7 and June 17, 2020 orders.

Defendant's cross-motion requested the court set and compel the payment of child support and arrears for the period of June 27, 2016 through June 17, 2020. It also requested the court grant a newly appointed parenting coordinator the ability to make recommendations regarding child support from June 17, 2020 to August 31, 2021, when the parties shared equal residential custody; and September 1, 2021 through the present, during which regular parenting time had

resumed. Defendant asked the court to order the exchange of updated financial information for 2020 and 2021, and year-to-date income for 2022, as well as updated child-related budget expenses to be submitted to the parenting coordinator. Like plaintiff, defendant also sought counsel fees and costs.

Defendant argued the first parenting coordinator exceeded the scope of his authority. His recommendations could not be binding because they were incomplete. Defendant pointed out her motion, which resulted in the entry of the August 19, 2020 order, sought a recalculation of arrears, not child support modification. She did not consent to the parenting coordinator recalculating child support retroactive to 2016, but "figured [she] would see where the process took [the parties] because maybe the [p]arenting [c]oordinator could come to a full resolution regarding child support [she] could live with rather than continuing to litigate this years[-]long issue." However, the parenting coordinator's recommendations ignored the judge's determination following the plenary hearing, which was based on the credible evidence. Defendant's certification set forth the child support plaintiff paid from 2016 through October 2022.

Plaintiff's reply certification pointed out the June 19, 2020 order had amended the June 17 order and permitted the parenting coordinator to review

12

child support and arrears. He argued defendant consented to the recalculation of the child support awarded in the June 17, 2020 order. Although plaintiff's motion initially sought to set the child support credit at $54,292, plaintiff provided a chart showing a corrected child support over-payment calculation, totaling $42,564.

The parties' motions were argued before a third motion judge on September 8, 2023. Defendant pointed out there was no motion to modify support pending that would in turn grant the parenting coordinator the ability to retroactively modify support. The discrete issues before the second motion judge, which he referred to the parenting coordinator, pertained to arrears and support during the pandemic. Granting plaintiff's motion to retroactively modify child support to 2016 would violate the statutory prohibition on the retroactive modification of child support in N.J.S.A. 2A:17-56.23a. Additionally, the parenting coordinator lacked the authority to modify court orders. Although the third motion judge indicated she had prepared a preliminary decision, no decision was issued, and the matter was transferred to a fourth motion judge.

On May 8, 2024, a fourth motion judge conducted a case management conference and discussed appointing a third parenting coordinator because the second wished to resign. The judge instructed the parties to provide him with a

13

copy of the transcript of oral argument before the third motion judge, the two-page summaries of their respective positions, and the third parenting coordinator's retainer amount.

On May 22, 2024, the fourth judge made oral findings. He concluded the August 19, 2020 order sua sponte expanding the scope of the parenting coordinator's role to retroactively modify child support was a final order, which went unchallenged by an appeal or motion for reconsideration. The judge found the parenting coordinator had done "a very thorough job" with the "arithmetical issues." He was "satisfied that the arithmetical issues [handled] through [the parenting coordinator]'s appointment [were] appropriate," and adopted the parenting coordinator's findings. The judge found plaintiff had overpaid child support by $54,292. He appointed a third parenting coordinator and authorized her to run calculations to determine if the total overpaid child support amount needed to be updated.[1]

---

[1] The third parenting coordinator would later correctly decline to address child support, pointing to Rule 5:8D, which had been promulgated effective September 1, 2023, along with guidelines limiting the role of parenting coordinators to parenting issues.

I.

Defendant argues the May 29, 2024 order was invalid as a matter of law because it violated the anti-retroactivity statute, N.J.S.A. 2A:17-56.23a. She asserts the June 17, 2020 order was a final order because it resulted from the two-day plenary hearing conducted by the second motion judge, which was meant to resolve plaintiff's child support obligation. Further, when the court heard defendant's motion for reconsideration in August 2020, plaintiff acknowledged the June 17, 2020 order was final in his responsive pleadings and during oral argument. He defended the motion by arguing defendant was out of time to seek reconsideration. The motion judge also said the issues before him were the calculation of arrears, payment of support through probation, and plaintiff's cross-motion for counsel fees. Further, plaintiff did not appeal from the child support determination, and his prior appeal was not considered interlocutory.

Given these facts, defendant argues the parenting coordinator was unauthorized to modify the June 17, 2020 order by adjusting child support retroactive to June 27, 2016. Excluding the pandemic period of April to June 2020, neither party sought to modify the June 17, 2020 order. Therefore, the fourth motion judge erred when he adopted the parenting coordinator's

15

recommendation. Defendant also asserts the judge also erred because he did not address N.J.S.A. 2A:17-56.23a, even though defendant pointed it out to him.

Defendant asserts the fourth motion judge improperly delegated his judicial authority when he adopted the parenting coordinator's recommendation. The June 19, 2020 order explicitly prohibited the parenting coordinator from modifying existing orders without the parties' consent. Defendant alleges she never consented to the retroactive modification of child support, and the parties only authorized the parenting coordinator to calculate arrears and plaintiff's child support obligations during the pandemic.

Defendant contends even if the parenting coordinator was permitted to make recommendations regarding the retroactive modification of child support, the fourth motion judge still erred when he accepted the recommendations without considering the facts in dispute between the parties. She asserts the judge's findings were limited and did not address the parties' arguments. This was problematic because the parenting coordinator made several errors when he recalculated child support. Defendant urges us to remand this matter to a different judge.

Ordinarily, "findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence." Cesare v. Cesare, 154

N.J. 394, 411-12 (1998).  This is because the Family Part has "special jurisdiction and expertise in family matters," which often requires the exercise of reasoned discretion.  Id. at 413.  If there is satisfactory evidentiary support for the Family Part judge's findings, our "task is complete and [we] should not disturb the result."  Beck v. Beck, 86 N.J. 480, 496 (1981) (quoting State v. Johnson, 42 N.J. 146, 161-62 (1964)).

We do not "accord the same deference to a trial judge's legal determinations.  Rather, all legal issues are reviewed de novo."  Ricci v. Ricci, 448 N.J. Super. 546, 565 (App. Div. 2017) (citation omitted) (citing Reese v. Weis, 430 N.J. Super. 552, 568 (App. Div. 2013)).  "[L]egal conclusions, and the application of those conclusions to the facts, are subject to . . . plenary review."  Reese, 430 N.J. Super. at 568.

"The trial court has substantial discretion in making a child support award."  Foust v. Glaser, 340 N.J. Super. 312, 315 (App. Div. 2001).  "If consistent with the law, such an award 'will not be disturbed unless it is manifestly unreasonable, arbitrary, or clearly contrary to reason or to other evidence, or the result of whim or caprice.'"  Id. at 315-16 (quoting Raynor v. Raynor, 319 N.J. Super. 591, 605 (App. Div. 1999)) (internal quotation marks omitted).

17

"The obligation to provide child support 'is engrained into our common law, statutory, and rule-based jurisprudence.'" Colca v. Anson, 413 N.J. Super. 405, 414 (App. Div. 2010) (quoting Burns v. Edwards, 367 N.J. Super. 29, 39 (App. Div. 2004)). Along these lines, the child support guidelines are premised upon the principles "that (1) child support is a continuous duty of both parents, (2) children are entitled to share in the current income of both parents, and (3) children should not be the economic victims of divorce." Child Support Guidelines, Pressler & Verniero, Current N.J. Court Rules, Appendix IX-A to R. 5:6A, ¶ 1, www.gannlaw.com (2026).

If the parties' income exceeds the maximum under the guidelines, the trial court has discretion in the methodology it "employ[s] in arriving at a child support award" with the goal of calculating an award "in the best interest of the child after giving due consideration to the [N.J.S.A. 2A:34-23(a)] statutory factors and the guidelines." Caplan v. Caplan, 182 N.J. 250, 272 (2005). In above-the-guidelines cases, "[c]hildren are entitled to have their 'needs' accord with the current standard of living of both parents, which may reflect an increase in parental good fortune." Zazzo v. Zazzo, 245 N.J. Super. 124, 130 (App. Div. 1990); see also Walton v. Visgil, 248 N.J. Super. 642, 649 (App. Div. 1991).

Pursuant to these principles, we conclude the retroactive modification of child support was a mistaken exercise of discretion and application of law. Initially, we reject the notion defendant ever agreed to retroactively modify child support. Aside from the fact neither party appealed from the June 17, 2020 order, which had been hard fought and entered following a plenary hearing, it is obvious to us from a review of the August 2020 transcript defendant never assented to a modification of child support. The transcript shows defendant's counsel declined to continue arguing with the judge after the judge suggested having the parenting coordinator address child support. We decline to interpret this deference to the court as acquiescence, let alone assent to the retroactive modification of child support.

The retroactive modification of child support is also prohibited as a matter of law. N.J.S.A. 2A:17-56.23a states:

> No payment or installment of an order for child support, or those portions of an order which are allocated for child support . . . shall be retroactively modified by the court except with respect to the period during which there is a pending application for modification, but only from the date the notice of motion was mailed either directly or through the appropriate agent.

Since the plenary hearing had concluded and the judge had already decided child support, there was no pending application to modify child support that would

exempt the child support from the statutory prohibition on retroactive modification.

It was further improper for the parenting coordinator to address child support. As we noted, effective September 1, 2023, our Supreme Court adopted Rule 5:8D governing parenting coordinators. The Rule contains no language permitting a parenting coordinator to address child support and instead provides as follows:

> The [p]arenting [c]oordinator should provide guidance and direction to the parties with the children's best interests as the primary focus by reducing conflict and fostering sound decisions that will aid positive child development. The goals of the [p]arenting [c]oordinator shall be to aid the parties in monitoring and effectuating the existing parenting plan . . . ; to reduce misunderstandings and miscommunication between the parents; to help reduce litigation filed with the Family Part; to clarify priorities of the parents and their children; to explore possibilities for compromise; and to develop methods of communication that promote collaboration in parenting. The [p]arenting [c]oordinator should facilitate decision-making by the parties whenever practicable and make recommendations when the parties cannot agree.
>
> [R. 5:8D(b).]

Rule 5:8D(d) states "[t]he Administrative Director of the Courts shall issue (1) guidelines covering the operation of [p]arenting [c]oordinators . . . , and (2) . . . [t]he guidelines shall include, but not be limited to, the following:

20

A-3507-23

the authority . . . of a [p]arenting [c]oordinator."  Subsequently, the Director issued Directive #16-23, which attached guidelines expressly stating:  "The appointment of a [p]arenting [c]oordinator shall not affect the court's jurisdiction in any aspect of the case, including . . . support."  Admin. Off. of the Cts., Admin. Directive #16-23, Family – Parenting Coordinator Program – Guidelines; Forms attach. 1, at 1 (Sep. 1, 2023).  The guidelines further state: "The [p]arenting [c]oordinator shall not have authority to make recommendations regarding financial issues . . . ."  Id. attach. 1, at 2.

We are aware the second motion judge did not have the benefit of Rule 5:8D and the Directive's guidance.  However, the Rule existed and clearly applied when the third and fourth motion judges heard this case and considered defendant's objections to the parenting coordinator addressing child support. For these reasons, the fourth motion judge should not have considered the parenting coordinator's recommendations regarding child support, because they were void as a matter of law, and should have decided the dispute himself.

Instead, the judge adopted the parenting coordinator's recommendation without explaining his decision as required by Rule 1:7-4(a).  We have repeatedly observed the absence of "explicit findings and clear statements of reasoning [impedes meaningful appellate review and] 'constitutes a disservice

21

to the litigants, the attorneys, and the appellate court.'" Gnall v. Gnall, 222 N.J. 414, 428 (2015) (quoting Curtis v. Finneran, 83 N.J. 563, 569-70 (1980)). "Naked conclusions do not satisfy the purpose of [Rule] 1:7-4." Curtis, 83 N.J. at 570. The fourth motion judge's findings fell short of the mark. Furthermore, his wholesale adoption of the parenting coordinator's recommendations was troubling given the substantial errors in the child support calculations. We detail a few of those errors here.

Notwithstanding the fact the parenting coordinator was statutorily barred from retroactively modifying child support, his calculation reached back even earlier than the June 27, 2016 effective date for child support set by the June 17, 2020 order—extending to January 2016. The parenting coordinator's calculations also deprived the children of the full benefit of plaintiff's entire income when he arbitrarily excluded plaintiff's capital gains income for 2019. The guidelines are clear: a party's net capital gains are a source of income for child support. Child Support Guidelines, Pressler & Verniero, Current N.J. Court Rules, Appendix IX-B to R. 5:6A, Line 1 through 5 - Determining Income, Sources of Income ¶ s, www.gannlaw.com (2026).

The parenting coordinator demonstrated a lack of familiarity with calculating above-the-guidelines support when he averaged the "differential" of

the parties' earnings and then failed to explain why he was not awarding support above the guidelines. He also arbitrarily used a shared parenting worksheet when plaintiff never had the requisite number of overnights to receive the benefits of a shared parenting calculation. The parenting coordinator did not include the children's share of the health insurance premium despite the fact the guidelines state the cost should be included in the calculation and does not bar the expense because both parents insure the children. Child Support Guidelines, Pressler & Verniero, Appendix IX-A to R. 5:6A, ¶¶ 9(b), 26.

These patent errors by the parenting coordinator should have given the fourth motion judge pause before he adopted them. The motion judge also found plaintiff's child support overpayment was $54,292 without explaining how he arrived at the number.

For these reasons, the May 29, 2024 order is reversed. We remand the matter to the second motion judge because he, having tried the case, is most familiar with it. On remand, we direct the judge to decide defendant's requests to: enforce the June 17, 2020 child support order through the date the parties began to share custody during the pandemic; enforce the arrears awarded under the June 17, 2020 order; determine the child support payable during the pandemic; and decide to whom child support will be paid going forward.

Rule 5:7-4(d) states:  "All orders which include payment of child support . . . shall be entered onto the statewide automated child support enforcement system, and presumptively deemed payable to the New Jersey Family Support Payment Center, and supervised by the Probation Division, unless the court orders otherwise, for good cause shown."  We recognize the second motion judge found good cause to have child support flow outside of probation because of its errors.  However, given the nature of this litigation and the substantial errors committed by the parenting coordinator, we fail to see how the parties, their attorneys, the court, and the best interests of the children benefitted by exempting support from flowing through probation.  For these reasons, we direct the second motion judge to reconsider ordering child support payable through probation after he adjudicates the issues we outlined in the preceding paragraph.

II.

Plaintiff's cross-appeal urges us to remand the denial of his request for counsel fees and costs for findings.  He argues both the August 19, 2020 and May 29, 2024 orders lacked findings under Rule 1:7-4 as to why the request for fees and costs were denied.

Counsel fee determinations are "discretionary, and will not be reversed except upon a showing of an abuse of discretion."  Barr v. Barr, 418 N.J. Super.

18, 46 (App. Div. 2011). An abuse of discretion may arise when the trial judge has not considered and applied the Rule 5:3-5(c) factors or made inadequate findings to support the award. Clarke v. Clarke ex rel. Costine, 359 N.J. Super. 562, 572 (App. Div. 2003).

We need not go into detail about the second and fourth motion judges' findings regarding counsel fees. They each denied counsel fees, reasoning neither party had acted in bad faith. However, Rule 5:3-5(c) mandates consideration of more than just a party's good faith; it sets forth eight other unrelated factors. See R. 5:3-5(c)(1)-(2), (4)-(9).

For these reasons, we reverse the denial of counsel fees in both the August 20, 2020 and May 29, 2024 orders, and remand the issue for reconsideration as to both parties' requests for fees. Our decision should not be interpreted as expressing an opinion on whether either party is entitled to fees.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division